# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT GILLESPIE )<br>11159 POND FOUNTAIN COURT )<br>NEW MARKET, MARYLAND 21774 )<br>  )<br>  Plaintiff, )<br>  )<br>  )<br>  vs. )<br>  )<br>  )<br>CAPITOL REPROGRAPHICS, LLC )<br>615 LAS TUNAS #X )<br>TEMPLE CITY, CALIFORNIA 91780 )<br>  )<br>Serve:  Registered Agent )<br>    Lucas Mageno )<br>    1800 Avenue of the Stars )<br>    Suite 1150 )<br>    Los Angeles, CA 95831 )<br>  )<br>  and )<br>  )<br>LUCAS MAGENO, INDIVIDUALLY )<br>ANDTRADING AS CAPITOL DIGITAL )<br>DOCUMENT SOLUTIONS, LLC )<br>555 CAPITOL MALL )<br>SUITE 540 )<br>SACRAMENTO, CA 95831 )<br>  )<br>Serve:  Registered Agent )<br>    Lucas Mageno )<br>    1325 G Street, NW )<br>    1st Floor )<br>    Washington, DC 20005 )<br>  )<br>    Defendants ) | Case No. | |

## **COMPLAINT**

Plaintiff Robert Gillespie ("Gillespie"), by and through his attorney, Rand L. Gelber, Esquire, and for his Complaint against Defendants Capitol Reprographics, LLC

("Capitol Reprographics") and Lucas Mangeno, individually and trading as Capitol Digital Document Solutions, LLC ("Capitol Digital"), and states as follows:

## JURISDICTION

1. The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1332, as the matter in controversy exceeds, exclusive of interest and costs, the sum or value of ($75,000.00) and the parties are diverse.

## VENUE

2. This case is properly before the United States District Court for the District of Columbia, because the events giving rise to Plaintiff's claims occurred in the District of Columbia and the Defendant, Capitol Reprographics, LLC, is a California limited liability company with authority to transact business in the District of Columbia, and Defendant Lucas Mangeno, trading as Capitol Digital Document Solutions, LLC, is transacting business in the District of Columbia..

## PARTIES

3. Plaintiff Gillespie is, and at all time relevant, a resident of the State of Maryland.

4. Defendant Capitol Reprographics, LLC, is, and at all times relevant, a California Limited Liability Company registered to do business in the District of Columbia. Upon investigation, Capitol Reprographics appears to be a parent company of Capitol Digital Document Solutions, LLC, an unformed entity.

5. Defendant Lucas Mangeno, trading as Capitol Digital Document Solutions, LLC, is believed to be, at all relevant times listed below, a resident of the State of California and transacts business in the District of Columbia at 1325 G Street, NW, 1st

Floor, Washington, DC 20005.

## FACTS

6. On November 1, 2003, Plaintiff and Defendant Lucas Mageno, trading as Capitol Digital, entered into an Employment Agreement ("Agreement"), a copy of which is attached hereto and incorporated herein by reference as Exhibit #1, whereby Plaintiff would be employed as Director of Client Services for Defendant Lucas Mangeno's Capitol Digital's Washington, D.C. office.

7. As Defendant Lucas Mangeno and Capital Digital's employee, Plaintiff was responsible for day-to-day operations of Capitol Digital's Washington, D.C. office on a full-time and "best efforts" basis as an at will employee.

8. Pursuant to the Agreement, in addition to a monthly salary, Plaintiff would receive a ten percent (10%) commission on all sales over Twenty Thousand Dollars ($20,000.00) in each month. Paragraphs 4 and 9 of the Agreement also provide that Plaintiff would receive a five percent (5%) profit sharing program that would begin accumulating from the beginning of his employment.

9. On March 8, 2006, Plaintiff resigned from his position at Capitol Digital.

10. Paragraph 9 of the Agreement states that Defendants would pay Plaintiff five percent (5%) of net profits on an annual basis to be paid to Plaintiff in the subsequent year on a quarterly basis.

11. Paragraph 9 of the Agreement further provides that net profits are defined as revenue actually received by Defendants as a result of sales on a cash rather than

accrual basis, less all operating expenses attributable to Capitol Digital's Washington, D.C. office.

12. Paragraph 14 of the Agreement states that the party prevailing in any dispute arising out of or relating to the Agreement shall be awarded attorney's fees and costs.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

13. Plaintiff re-alleges paragraphs 1 through 12 as if fully set forth herein and alleges further:

14. Pursuant to the Agreement, Plaintiff was to receive five percent (5%) of the net profits for the calendar years 2004 and 2005.

15. It is believed and therefore averred that Defendants have failed to pay Plaintiff his five percent (5%) share of the net profits of the company for calendar years 2004 and 2005.

16. Defendants have breached the terms of the Agreement.

17. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages and incurred costs in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and prays that the following relief be awarded to Plaintiff:

(a) for compensatory and consequential damages against Defendants for breach of contract;

(b) for Plaintiff's attorney's fees and costs in this action pursuant to

Paragraph 14 of the Agreement between Plaintiff and Defendants;

(c) for an order requiring Defendants to produce supporting documentation and information necessary to verify the accuracy of any calculations or estimations of Plaintiff's share of net profits;

(d) for such other and further relief as is deemed appropriate.

### JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: November 20, 2006

Respectfully submitted,

/s/ Rand L. Gelber

_____

Rand L. Gelber, Esquire (#8663)
One Church Street
Suite 802
Rockville, Maryland 20850
(301) 251-0202
(301) 251-0849 (facsimile)

*Attorney for Plaintiff,*
*Robert Gillespie*

# EMPLOYMENT AGREEMENT

## BETWEEN CAPITOL DIGITAL DOCUMENT SOLUTIONS, LLC AND ROBERT GILLESPIE

This Employment Agreement (the "Agreement") is made and entered into as of November 1, 2003 by and between Capitol Digital Document Solutions, LLC a California limited liability company, having an address of 555 Capitol Mall Suite #540 Sacramento, California, 95831 ("Company"), and Robert Gillespie (Employee).

R E C I T A L S:

A. Company is a document service enterprise in the business of document copying, imaging, storage, retrieval, coding, electronic discovery and other related services. Employee is experienced in the sale and delivery of such services.

B. Company desires to employ Employee and Employee desires to be employed by Company for the purposes and on the terms and conditions set forth in this Agreement.

C. This Agreement replaces and supersedes in their entirety any and all prior agreements, express or implied, written or oral, performed or unperformed, pertaining to the employment of Employee and the compensation to be paid to him therefore, and all such prior agreements and understandings are hereby terminated and shall be of no further force or effect.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Employee agree as follows:

1. Employment: Company hereby employs Employee as ***Director of Client Services, Washington D.C., Capitol Digital Document Solutions, LLC,*** for the purposes and on the terms and conditions set forth in this Agreement. Employee's duties shall be to (i) identify clients or customers in the market for document services in the Territory defined in Exhibit A hereto, sell the services and products provided by the Company and (ii) perform and/or supervise the performance and delivery of those services, subject to the policy guidelines and directives which are provided to him by Company from time to time during the term of this Agreement. Employee shall have no authority to bind or obligate Company to any financial commitment, including entering leases or the borrowing of any monies on a secured or unsecured basis, without obtaining the prior written authorization of


EXHIBIT #1

Company as to the specific transaction. Employee shall have limited authority to bind or obligate the Company for matters necessary to the day to day operation of the Washington D.C. office for such items as, without limitation, contracts for supplies, vendor services or sub-contractor services as determined by the best business judgment of Employee. Employee's duties also shall include such other matters or responsibilities as Company and Employee may jointly agree upon from time to time during the term of this Agreement.

Employee's employment is on a full-time and "best efforts" basis meaning that during the term of this Agreement, Employee shall not accept any full or part-time employment, including without limitation as an independent consultant, without the prior written consent of Company, which may not be unreasonably withheld. Employee shall devote his full energies, interests, abilities, and productive time to the performance of his duties and responsibilities under this Agreement. During the term of this Agreement, Employee shall not, directly or indirectly, whether as a partner, employee, creditor, and shareholder or otherwise, promote, participate or engage in any activity or other business competitive with Company's businesses. Notwithstanding the foregoing, Employee may participate in personal investments to the full extent desired by Employee so long as such personal investment activity does not detract from Employee's ability to devote his full energies and productive interests to the performance of his duties and responsibilities under this Agreement.

Employee will commence employment with the Company on a date mutually agreeable to both the Employee and the Company. Until commencement of employment, any provisions of this Agreement bind neither the Company nor the Employee.

2. Term of Employment: Employee and Company acknowledges and agrees Employees term of employment is "at will" and Employee may resign from Company at any time for any reason. Company may terminate Employee at any time for any reason.

    a. Termination: This Agreement and Employee's employment shall be terminated upon the first to occur of any of the following: (a) mutual agreement of the parties; (b) Employee's death or Disability; (c) termination by the Company; (d) Employee's resignation.

    b. "Disability" for purposes of this agreement shall mean physical or mental disability to the extent that Employee becomes disabled for more than sixty (60) consecutive days or ninety (90) days in the aggregate in any 12-month period such that he is unable to perform his duties on a full-time basis.

3. <u>Compensation</u>: Employee shall receive a monthly salary of $4,166.66. The salary shall be paid on the regular paydays established by the Company. Currently the Company's paydays are the 5th. and the 20th. ~~Of each month. Also,~~ **[Was there something written here?]** *Sorry, no.*

4. <u>Commissions</u>: Employee shall receive a 10% commission on all personal sales over $20,000 in any given month. Company also agrees to allow Employee to obtain a 5% profit sharing program that will begin accumulating from day one. This will be paid out after the first quarter of the first year and will be paid in increments of ¼ of total profits after taxes every 90 days for the remaining period of his employment with Company. Company's pay period is calculated on the calendar month. Commissions will be paid to the Employee on the Company's first payday of the second month in which the commission was earned. The salary and sales commission payments by Company are subject to such normal deductions and withholdings as Company may from time to time be required to make pursuant to applicable law, governmental regulation or order. <u>An override of 1% on the entire office will be paid to the employee on a monthly basis. Also the Company agrees to revisit the compensation package after the first six months of employment and grant a potential increase dependent upon performance.</u> **[Are commissions from the previous month paid on the 5th or 20th of the following month?]** *Ex: Jan. ~~60~~ revenue paid March 5th. (In)*

*B  6-16-05*

5. <u>Vacations, Training and Conferences</u>: Employee shall be entitled to ten (~~10~~) working days and (5) paid holidays during each calendar year of his employment as paid vacation. Such vacations shall be taken at such time as shall be agreed upon between Employee and the Company. Vacation time will be cumulative from year to year. Absence because of military duties shall not be included for the purpose of vacation, but net payment for military duties shall reduce the Company's salary obligation to the extent thereof. Employee shall attend such meetings, seminars and other postgraduate training sessions as agreed by Employee and the Company. Such activities, training and conferences will not be considered vacation time.

*Telmin Cowth L/ her -J John*

6. <u>Reimbursable Expenses</u>: The Company shall reimburse the employee the following expenses:
   (a) Company shall reimburse Employee for cellular phone expenses 100.00 per month. Submit phone bill with expense report. Employee must provide own phone.
(b) Employee's necessary travel, hotel, and client entertainment expenses incurred in connection with the business of the Company or other events that contributes to the benefit of the company.

(c) Employee's monthly client entertainment expenses (lunches, gifts etc.) should not exceed one (1%) percent of Employees gross monthly sales.

Employee shall submit a monthly expense report to the Company's Controller on the last day of each month for reimbursement by the Company's payday on the 5th day of the following month. Employee shall attach receipts to expense report. Failure of Employee to produce a receipt for a particular expense shall result in no reimbursement paid by Company.

7. Business Automobile: Employee shall be given a 150.00 car allowance. Reimbursement shall be paid to Employee on the 5th day of each month. Company shall provide parking for employee at Company's expense.

8. Benefits: During the term of his employment and subject to applicable Eligibility requirements of position, tenure, salary, age, health and other Qualifications as may be set forth in Company's employee manual or pursuant to The terms of the applicable benefit provider, Employee shall participate in such benefit plans or programs as are available to Company's other employees, including without limitation medical, dental, health insurance and 401k plan. Employee will be waived from any waiting period for all benefits other than the 401k plan. **[Please provide information regarding coverage and costs for health insurance, particularly family coverage.]** *WILL BE PROVIDED PRIOR TO OPENING. (UM)*

9. Profit Sharing: Company shall pay Employee 5% of net profits, hereinafter defined, on an annual basis.

> 1) Net Profits are defined as revenue actually received by Company as a result of sales by the Washington D.C. Division on a cash rather than accrual basis, less all operating expenses attributable to the Washington D.C. Division including, expenses for rent, telephone, pagers, salaries, consumables, supplies and materials, machine operating costs, insurance, advertising, promotion, business development expenses, administrative costs, allocation to Company for the Washington D.C. Division's share of the joint administrative expense for payroll, payables, receivables, bookkeeping, officers' payroll and expense allocation, the proportional share of taxes paid by members of the Company for the quarter, and the total amount of taxes paid by the Washington D.C. Division of the Company within the subject quarter.
>
> 2) Profits shall be payable beginning on the last day of the first quarter of the first entire year of employment the effective date being the

start date of this agreement with the first payment representing profits, if any, generated during the first three month's operation under this agreement. Each subsequent quarterly profit distribution will be calculated based on the same fifteen-month delay period.

10. <u>Relationship of Company and Employee</u>. The relationship of Company and Employee throughout the term of this Agreement shall be that of employer and employee only and no other relationship shall exist between them. Employer shall defend Employee from third party creditors or shareholder cash calls.

11. <u>Confidentiality</u>. All agreements, documents, studies, analyses, data, statistics, marketing materials, leads and lead lists developed or prepared by Employee or others in Company's employ during the term of this Agreement shall be and remain confidential and shall be the sole property of Company. Company will supply Employee with promotional materials. Employee hereby acknowledges that Company develops and utilizes valuable procedures, confidential information and copyrighted materials, including but not limited to names of customers who may wish to purchase document services, leads and lead lists, studies and analyses, marketing procedures and various brochures and other printed materials, all of which constitute a valuable part of Company's assets built up by Company's ingenuity, time, labor and expense over a period of many years and all of which constitute Company trade secrets. Employee acknowledges that such information is highly confidential and is not accessible to Company's competitors, and that Company has endeavored to protect the confidentiality of such information over the years. Accordingly, Employee agrees not to disclose or use, at any time during his employment or at any time thereafter, any of such trade secrets or confidential information belonging to Company in regards to auctions (including but not limited to the names of prospective customers) except as may be required in the performance of his duties for Company, whether or not such secrets or information were developed by Employee or with his/her assistance. Employee agrees that he shall not, at any time during his employment or upon the termination thereof, remove from the premises of Company any documents, photographs, brochures, photocopies, computer disks or other documents or data except as specifically required in the performance of his duties hereunder. Employee agrees not to use any of Company's copyrighted materials, except as may be required in the performance of Employee's duties for Company, so long as the copyright exists. Employee hereby acknowledges that the restrictions contained herein are reasonable and necessary to protect the legitimate interests of Company, in view of the remedies at law for violation of any of such covenants will be inadequate, that such violation which will cause irreparable injury within a short period of time, and the Company shall be entitled to preliminary and other injunctive relief against such violation, in additional to any other remedies available to Company at law or in equity.

13. <u>Choice of Law; Forum</u>:  Any dispute arising out of this agreement or Employee's employment with Company shall be resolved in accordance with statutory and decisional law of the Sate of California.

14. <u>Attorneys' Fees</u>:  The party prevailing in any dispute arising out of or relating to this agreement shall be awarded its attorney's fees and costs.

15.  <u>Miscellaneous</u>:

(a) <u>Assignment</u>:  This Agreement is for the unique personal services of Employee and may not be assigned by Employee without the express written consent of Company and its affiliates.  Except as so provided, this Agreement shall be binding upon and inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

(b) <u>Severability</u>:  Each provision, sub-provision or term of this Agreement is intended to be severable and shall continue in full force and effect although other provisions herein may be determined invalid or void for any reason.

(c) <u>Entire Agreement; Amendments</u>:  This Agreement contains the entire agreement of the parties with respect to the subject matter covered hereby and may be amended, waived or terminated only by an instrument in writing signed by the parties hereto.  This Agreement shall be interpreted according to its fair meaning and not for or against the party, which drafted it.

(d) <u>Counterparts</u>:  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**COMPANY**:
Capitol, LLC

By: _____
Name: _LUCAS MAGEND_
Title: _MANAGING PARTNER_

## I (a) PLAINTIFFS
Robert Gillespie

## DEFENDANTS
Capitol Reprographics, LLC
Lucas Mageno, ind. & t/a Capitol Digital Document Solutions, LLC

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Frederick
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Rand L. Gelber
1 Church Street, Suite 802
Rockville, MD 20850
301-251-0202

CASE NUMBER   1:06CV02175
JUDGE: Ellen Segal Huvelle
DECK TYPE: General Civil
DATE STAMP: 12/20/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ● 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

● **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/* *2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Breach of Contract

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐  DEMAND $ 200,000.00 +  JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 12/6/2006   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.