## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**ROBERT GILLESPIE**          )
                                    )
      **Plaintiff,**         )
                                    ) **Civil Action No. 06-2175(ESH)**
                                    )
**v.**                           )
                                    )
**CAPITOL REPROGRAPHICS, LLC**  )
**and**                     )
                                    )
**LUCAS MAGENO**            )
                                    )
      **Defendants.**     )

_____ )

## DEFENDANTS' JOINT MOTION TO VACATE DEFAULT JUDGMENT AND DISMISS FOR LACK OF JURISDICTION

Defendants LUCAS MAGENO and CAPITOL REPROGRAPHICS, LLC, by and through their attorney, Athan T. Tsimpedes, pursuant to Rule 60 of the Federal Rules of Civil Procedure and Local Rules 12(g) and 11.2, move this court to Vacate the Default Judgment against them entered on July 20, 2007 and Dismiss this matter for Lack of Jurisdiction.

In support, Defendants' jointly submit the accompanying Memorandum of Points and Authorities, their respective Answers, the Declaration of John Carmichael, Esq. and state the following but not limited reasons:

      (a)    The Plaintiff fails to adequately assert this Court's subject-matter jurisdiction in his Complaint,

      (b)    This Court is not the proper venue this dispute,

      (c)    This Court does not have personal jurisdiction over at least one of the defendants,

      (d)    Defendants have meritorious defenses, collectively and individually, to

Plaintiff's complaint,

(e)    The Defendants' Nonresponse is excusable, and

(f)    There is no unfair prejudice to Plaintiff by vacating the default judgment

entered in this matter.

Counsel for defendants has conferred with counsel for plaintiff pursuant to Local Rule 7(m).

Respectfully submitted,

LAW OFFICES OF ATHAN T. TSIMPEDES

BY: ____/s/_____          Dated: July 16, 2008.
    Athan T. Tsimpedes

11 Dupont Circle, NW
Suite 500
Washington, DC 20036
202-638-2100
atsimpedes@comcast.net
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
ROBERT GILLESPIE                    )
                                    )
        Plaintiff,                  )
                                    ) Civil Action No. 06-2175(ESH)
                                    )
v.                                  )
                                    )
CAPITOL REPROGRAPHICS, LLC          )
 and                                )
                                    )
LUCAS MAGENO                        )
                                    )
        Defendants.                 )
_____    )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO VACATE DEFAULT JUDGMENT AND DISMISS FOR LACK OF JURISDICTION

Defendants LUCAS MAGENO ("MAGENO") and CAPITOL REPROGRAPHICS, LLC

(CAPITOL"), (Jointly referred to as "Defendants") submit this Memorandum of Points and

Authorities in support of their Joint Motion and state as follows:

I.    PROCEDURAL HISTORY AND BACKGROUND

        Plaintiff filed this matter on December 20, 2006 (Dock. 1). On April 5, 2007, this

Court ordered Plaintiff to serve Defendants on or before April 20, 2007 (Dock. 2). Plaintiff

did not so serve Defendants, who do not reside in this District, and this Court dismissed

this matter without prejudice on April 24, 2007 (Dock. 3). Plaintiff moved to vacate the

dismissal on April 27, 2007 (Dock. 4); this Court granted Plaintiff's motion, without

appearance by Defendants, on May 14, 2007 (Dock. 5), based on service completed on April

23, 2007 (Dock. 4, 6, 7).

        This Court then issued an order directing Plaintiff to file a motion for default against

Defendants on or before June 25, 2007 (Dock. 8). Plaintiff so moved on June 22, 2007 (Dock.

9), which was granted administratively by the Clerk of this Court on June 28, 2007 (Dock. 11). On July 11, 2007, Plaintiff moved to convert the default to a default judgment (Dock. 14), which was granted and entered by this Court on July 20, 2007 (Dock. 15).

Plaintiff's counsel was aware that Defendants were each represented by counsel who does not maintain an office in this District — or, for that matter, in this time zone (Carmichael Dec. ¶ 2, 7- attached as Exhibit 1). However, at no time did Plaintiff make any effort to serve Defendants' counsel or keep Defendants' California counsel apprised of the progress of this matter by serving or providing courtesy copies of any filings or motions after this matter was first dismissed in April 2007 (*Id.* ¶ 2, 5, 6). In particular, neither Plaintiff's counsel nor any other person or entity acting on behalf of Plaintiff have served or otherwise provided a copy of any motion or default papers concerning Defendants to Defendants' California counsel (*Id.*). This is particularly prejudicial to defendant Capitol Reprographics, LLC, a corporate entity (Dock. 1).

Defendant Capitol Reprographics, LLC, was placed into receivership in June 2007 (Carmichael Dec. ¶ 1, 2) — *before* this Court entered default judgment against Defendants on July 20, 2007 (Dock. 15).

## II. Standard of Review.

There is a strong preference for resolving litigation on its merits rather than by default judgment, *See* <u>Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980</u>) (stating that "modern federal procedure favor[s] trials on the merits"), and because pro se litigants are not held to the same standards in all respects as are lawyers[1],

---

[1] In this case, Plaintiff, after the court properly dismissed his action for lack of service, filed Motions to Reinstate and then for Default against Defendants knowing either that Defendants were represented by counsel, John C. Carmichael, or were acting pro se and having never served (not even upon Defendants' California Counsel) or received such motions to Defendants and their counsel, John Carmichael's surprise and detriment as more fully stated herein. There is no doubt that Plaintiff's counsel was treating this matter as if Defendants were acting pro se as evidenced by the certificate of service attached to Plaintiff's several motions (Reinstate, Entry of Default and Default Judgment) despite communicating with Defendants' California counsel but never apprising him of the said motions resulting in the current state of affairs to the surprise or excusable neglect of

See *Haines v. Kerner, 404 U.S. 519, 520 (1972).* Local Civil Rule 7(g) requires a motion to vacate entry of default to be accompanied by an answer to the complaint properly verified under Local Civil Rule 11.2. Defendants, Capitol Reprographics LLC and Lucas Mageno, have satisfied these requirements by submitting their Answers as stated herein and attached as Exhibits 2 and 3 respectively.

The Federal Rules of Civil Procedure begin by directing that "[The Federal Rules of Civil Procedure] should be construed and administered to secure the **just**, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Allowing the defaults and default judgments to stand under this circumstances of this matter would be fundamentally *un*just, particularly as the Rules provide this Court the power and discretion to vacate the defaults and default judgments.

Ordinarily, a default that has not been converted to a judgment may be set aside by the Court for good cause in its discretion under Fed. R. Civ. P. 55. *See Lepkowski v. Dep't of Treasury,* 804 F.2d 1310, 1311-12 (D.C. Cir. 1986)*; see also Jackson v. Beech,* 636 F.2d 831, 834 (D.C. Cir. 1980); *Int'l Painters & Allied Trades & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 25-26 (D.D.C. 2003). Strong federal policies favor resolving disputes on their merits.

> The policy underlying the modernization of federal procedure … (was) the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits.

*H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970); *see also Pulliam v. Pulliam,* 478 F.2d 935, 936 (D.C. Cir. 1973) (noting that in the context of a default judgment "a court should liberally allow relief under" Rule 60(b) because "a resolution on the merits is preferable to a judgment by default").

Defendants.

3

This policy applies even under the stricter requirements of Fed. R. Civ. P. 60(b) that apply to defaults converted to default judgments. *Jackson*, 636 F.2d at 834. Fed. R. Civ. P. 60(b) allows relief from a judgment on the following grounds as relevant to this action:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect; ….
> (4) the judgment is void; ….
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion for such relief for mistake, inadvertence, surprise, or excusable neglect (Fed. R. Civ. P. 60(b)(1)) must be filed within one year after the judgment in question. Fed. R. Civ. P. 60(c)(1). A motion for relief for void judgment or "any other reason" does not have a specific deadline under Rule 60(c); however, as this motion is filed within the one-year period specified in Rule 60(c)(1), that is immaterial.

Although "any other reason" is not specifically defined in Fed. R. Civ. P. 60(b)(6), the authority in this Circuit implies that these reasons are closely analogous to the "good cause" required under Fed. R. Civ. P. 55 for any other judgment. *Cf., e.g.*, *Jackson*, *supra*, 636 F.2d at 834–37; *Flynn v. Pulaski Constr.Co., Inc.*, 2006 U.S. Dist. LEXIS 1680, *22 (D.D.C. Jan. 6, 2006) (using the Rule 55 rubric in a mixed Rule 55 and Rule 60 context). Determining good cause requires a balancing of three factors: (1) whether the default was willful, (2) whether vacating the default would prejudice plaintiff, and (3) whether offered defenses are meritorious. See *Keegel v. Key West & Carribean Trading Co., Inc.*, 627 F.2d 372, 373–74 (D.C. Cir. 1980).

## III.  THIS COURT SHOULD VACATE THE DEFAULT AND DEFAULT JUDGMENT AGAINST EACH DEFENDANT

This Court should find in its discretion that vacating the default and default judgment against each defendant is both appropriate and well-founded. The failure to

respond was not willful, but a result of other circumstances contemplated under Rule 60 of the Federal Rules of Civil Procedure. Vacating the default would not unfairly prejudice the plaintiff, as the evidence that must be introduced is documentary business records that remain available, if somewhat inconvenient to produce due to the receivership. These documents were admitted by Plaintiff in his Complaint to be required in order to determine his actual damages. Such production of documents is the only way Plaintiff could prove his damages beyond the "speculative level" and otherwise meet the amount of controversy requirement invoking proper subject matter of the court. Perhaps most importantly, both defendants have substantial meritorious defenses against the complaint.

## A. Defendants' Nonresponse Was Not Willful and is Excusable Under the Circumstances.

Defendants' nonresponse was due to a combination of late, inadequate or failed service of Motions and/or other papers upon Defendants or their California counsel, and financial factors preventing response — not to any willful disregard of this Court's authority as mistakenly invoked by plaintiff.

### (1) Due to Plaintiffs' Failure to Serve Defendants' Counsel, Defendants Have Never Had an Adequate Opportunity to Oppose the Complaint or the Default Judgment.

Service in this matter has been extremely confused... and reinforces the impropriety of asserting jurisdiction over, let alone a judgment against, defendant Lucas Mageno. This Court originally dismissed this matter *sua sponte* for lack of service on either defendant. Dock. 3. Plaintiff's counsel was well aware that defendants were represented by California counsel. See Carmichael Dec. ¶ 2, 5, 6; *cf.* LR 83.2(c) (requiring appearance only by counsel admitted in this District).

Further, *this matter was dismissed by this Court*. See Dock. 3. It is hardly surprising that a corporate entity facing receivership, and its officers, would turn their attention away from a dismissed matter, particularly as plaintiff's counsel never did serve known

California counsel for defendants. See Carmichael Dec. ¶ 2, 4, 5.  As a matter of fact, defendants' California counsel was never served or provided a copy of the Motion to Reinstate plaintiff's claim nor the Motion for the Entry of Default or subsequent Motions, even as a professional courtesy.  Clearly, such conduct was intended to keep Defendants' "in the dark" about the Plaintiff's motions while keeping California counsel for Defendants under the impression that the case was dismissed to the detriment of Defendant's.

Even-handed application of the Federal Rules of Civil Procedure, particularly in light of Rule 1's imprecation to interpret the Rules to "secure the just... determination of [this] action," virtually requires excusing the nonresponse of defendants Capitol Reprographics, LLC, and Lucas Mageno, in light of the serious problems with service of process and other Motions or documents in this matter. Further, examining the delay in the context of this matter demonstrates that it has not been willful within the meaning of Rule 55 or Rule 60. As this motion is filed inside the most-restrictive deadline imposed by the Rules, this Court should treat the delay as non-willful and proceed to the remainder of the inquiry in determining whether to vacate the default judgments.

> **(2)    Defendant Capitol Reprographics, LLC's Receivership Made Compliance with Local Rule 83.2(c) Impossible, and Therefore Prevented Timely Response by a Corporate Defendant**

Defendant Capitol Reprographics, LLC has been unable to secure counsel in this District until extremely recently, due to receivership. See Carmichael Dec. ¶ 2, 7. The company has not yet emerged from receivership, but funds became available for local counsel to properly appear in this Court to contest this matter. This difficulty becomes more critical when acknowledging that this corporate defendant — a business organization that may not appear *pro se* (or, as it is known in the corporation's home jurisdiction, *pro per*), *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries... that a corporation may appear in the federal courts only

through licensed counsel") — is the only one even theoretically liable to plaintiff. *See* Part III.C.(2) *infra*.

Capitol Reprographics was thus caught in a bind not of its own doing. Regardless of the merits of its defenses, it could not appear in this Court without following this Court's local rules, in particular Local Rule 83.2(c). However, due to the receivership, it did not have the funds or permission to obtain local counsel and do so... and due to the previous dismissal of this matter and failure of service upon its out-of-District counsel, it had no awareness to do so.

Defendants' nonresponse was not willful and is also excusable under the circumstances when Plaintiff's counsel, while communicating with Defendants' California counsel, sought an unfair advantage and treated Defendants' as pro se litigants who are not held to the same standards as are lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Vacation of the Default and Default Judgment Would Not Prejudice Plaintiff

Plaintiff's own inaction strongly indicates that vacating the default and default judgment would not prejudice plaintiff. Defendants' California counsel has not been served with the default or the default judgment. See Carmichael Dec. ¶ 2, 3, 4, 5, 6. Neither has any action to domesticate the judgment in California been served upon either defendant. California counsel for defendants is not aware of any other action by plaintiff attempting to collect on the judgment or relying on the default. The nature of the action and Plaintiff's admission as such indicates that he will rely almost entirely upon documentary evidence — defendant Capitol Reprographics, LLC's business records. Thus, unavailability of evidence due to lapse of time would not be an issue or prejudice the plaintiff.

### C.    Defendants Have Presented Meritorious Defenses to the Complaint in Their Proposed Answers

The most critical aspect of vacating a default concerns the defenses offered to the underlying action. Defendants do not merely summarily deny plaintiff's asserted right to relief, but present both specific denials of factual assertions and specific affirmative defenses that would justify this Court's exercise of its discretion to vacate the default and default judgment against each defendant.

### (1)    Capitol Reprographics, LLC

Capitol Reprographics, LLC, denies, as factually inaccurate — and not consistent with the document attached to plaintiff's complaint, See Complaint. Ex. 1- attached as "Exhibit 4", several critical factual assertions. Capitol Reprographics, LLC, also raises a number of affirmative defenses that operate to partially or completely bar recovery for plaintiff.

Capitol Reprographics hired plaintiff. The terms of employment are set forth in Exhibit 1 of the Complaint. However, the complaint does *not* note that Capitol Reprographics did, in fact, offer the payment due to plaintiff, and was prepared to tender that payment at the time of offer. See Capitol Reprographics, LLC's (hereinafter "CR") Ans. ¶ 15 attached as Exhibit 2.  This is a substantially smaller sum than claimed by plaintiff (and, in fact, substantially smaller than that required for diversity jurisdiction). In short, this case boils down to a disagreement over accounting, which can be resolved by comparing Capitol Reprographics' business records to whatever proof plaintiff intends to offer in opposition.  Moreover, Plaintiff himself has admitted to requiring the business records of Defendant Capitol Reprographics in order to determine his actual damages.

Further, Capitol Reprographics has meritorious affirmative defenses. See CR Ans. Def. 1-8. Of particular note, a claim for default and default judgment in the face of plaintiff's own failure to properly and timely serve, if ever, the Complaint or his several

Motions to defendants or defendants' California counsel would itself justify a finding of unclean hands or excusable neglect as a matter of this Court's discretion, particularly in light of Fed. R. Civ. P. 1.

Either separately or together, these meritorious defenses justify vacating the default judgment. *FG Hemisphere Assocs., Inc. v. Democratic Rep. of Congo*, 447 F.3d 835, 842 (D.C. Cir. 2006) (meritorious statutory defense independently justifies vacation of default judgment); *Pulliam*, 478 F.2d at 936.

### (2)   Lucas Mageno (Personally)

In addition to the denials and defenses noted for Capitol Reprographics, LLC, which Lucas Mageno adopts, Mageno offers other meritorious defenses. Most critically, *on the facts* this Court would not have personal jurisdiction over Mageno, making his default and the corresponding default judgment void. *See* Fed. R. Civ. P. 60(b)(4). Mageno does not reside in the District of Columbia. Contrary to the allegations in the complaint, he did not "trade as" Capitol Digital Document Solutions, which was a slogan and not a trade name or other business entity. See Mageno Ans. ¶¶ 2, 4. He did not personally hire plaintiff, but acted as a corporate officer in signing plaintiff's contract with Capitol Reprographics, LLC. See Mageno Ans. ¶ 5-7 attached as "Exhibit 3". He simply does not have sufficient contacts with this District *as an individual, not as a corporate officer*, to support personal jurisdiction. See Mageno Ans. Def. 6; Fed. R. Civ. P. 60(b)(4).  Plaintiff's complaint solely relies upon the contract as his basis for liability.

The complaint presents no facts or notice sufficient to pierce the corporate veil and make Mageno personally liable for any conduct by the corporate entity, Capitol Reprographics, LLC. In fact, the complaint and its attached exhibit clearly state that the

employment contract is between plaintiff and Capitol Reprographics, LLC. See Cmplt., ¶ 6 and its Ex. 1 attached as "Exhibit 4". Nothing on the contract constitutes a personal guaranty of performance by Mageno. *Id.* To state a claim for breach of contract, a complaint must allege that a contract existed, that plaintiff performed its contractual obligations, that defendant breached the contract, and that plaintiff suffered damages due to the breach." *Par/cv. Arnout,* Civ. A. No. 89-3257(RCL), 1992 WL 184521, at *4 (D.D.C. July 14, 1992). "The burden is on the plaintiff to prove all the elements in an action for breach of contract." *Banzev. Am. Int'l Exports, Inc.,* 454 A.2d 816, 817 (D.C. 1983). Plaintiff has set forth no facts sufficient to demonstrate that Mageno was trading as Digital Capitol, let alone personally liable to Plaintiff for lost profits or the performance of the contract that was executed by Capitol Reprographics.

As the Supreme Court warned in *Twombly,* "factual allegations must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965; *see also Chamberlain v. Am. Honda Fin. Corp.,* 931 A.2d 1018, 1023 (D.C. 2007). Consequently, Plaintiff has not made out his claim for liability or damages against Mageno.

Thus, Mageno cannot be personally liable to plaintiff absent substantial additional proof sufficient to pierce the corporate veil. See Mageno Ans. Def. 7-9. If a court enters judgment without personal or subject matter jurisdiction, that judgment is not merely defective — it is void. *FG Hemisphere*, 447 F.3d at 842; *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 871 (4th Cir. 1999); *cf.* Fed. R. Civ. P. 60(b)(4) (allowing vacation of default judgment if the judgment is void).

## D.   THIS COURT SHOULD DISMISS THIS MATTER FOR LACK OF SUBJECT-MATTER JURISDICTION.

1.   <u>Plaintiff Did Not Properly Allege or Demonstrate his Damages Exceeded $75,000.00 to a Legal Certainty</u>.

This Court does not have subject-matter jurisdiction over this dispute, as the complaint fails to establish that the amount in controversy exceeds $75,000. The Complaint makes a bare allegation, without any supporting fact or reference, that the plaintiff can recover more than $75,000 as a result of a simple breach of an employment contract. *See* Cmplt. ¶ 1. Defendants are aware of no basis for such a claim.[2] Further, the conclusory allegation does not, as the Supreme Court has indicated is required, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007); *accord*, *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C. 2007).

As a matter of fact, Plaintiff admits that in order to prove or ascertain its damages, he must rely upon the documents in the possession of the Defendants. See Cmplt. – Prayer for Relief. Plaintiff does not meet the minimum threshold because he does not state in the affirmative factually that his damages exceed $75,000 at a minimum but rather relies upon a speculative "formula" that a conservative figure of net to gross profits is 25% in his supporting affidavit to his Judgment of Default. The Plaintiff sought approximately $197,000.00 from the court at his damages hearing and was granted a drastically reduced judgment-nearly half. Clearly, the Plaintiff had issues with the court presenting his damages that raised a red flag then and were drastically reduced by the court while no one was defending the action because Defendants were not made aware of the actions of the court by Plaintiff's counsel. Now that it is flagged again, a more focused review of the damages by the court is required as stated herein. Absent the amount in controversy

---

[2] Defendants simply cannot credit the speculative assumption of a 25% profit margin asserted in Gillespie's affidavit accompanying his Motion for Default, Doc. 14 ¶¶ 5-7 attached as Exhibit 5. This is completely inconsistent with both Capitol's records *and with disclosures made to Gillespie prior to his resignation*.

required by 28 U.S.C. § 1332, be met to a "legal certainty" this court has no subject-matter jurisdiction over this dispute. Further, this would make the underlying judgment inherently void. *FG Hemisphere*, 447 F.3d at 842; *Eberhardt*, 167 F.3d at 871; Fed. R. Civ. P. 60(b)(4).

Plaintiff alleges that defendants grossed $8,542.050.30 in 2004 and 2005.  Plaintiff argues that profits of $2,135,512.30 are based on a conservative figure of 25% of the gross revenue. Based on these calculations that are unsupported by evidence, Plaintiff calculated his compensation at 5% totaling $106,775.72.  *See Pl.'s Mot. In Support of Default, p.3* attached as Exhibit 6.  Plaintiff has not provided any basis, legal or factual, for this ambiguous "conservative figure" of 25% of the gross profits. By its very nature, this "conservative" figure is clearly speculative because it is not based on personal knowledge nor can the court take judicial notice of such facts to determine damages in this matter that must be proven to a legal certainty.

The burden is on the plaintiff to prove all the elements in an action for breach of contract.  See *Banzev. Am. Int'l Exports, Inc.,* 454 A.2d 816, 817 (D.C. 1983).  As the Supreme Court warned in *Twombly,* "factual allegations must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965; *see also Chamberlain v. Am. Honda Fin. Corp.,* 931 A.2d 1018, 1023 (D.C. 2007).  The jurisdictional amount in controversy can be satisfied if the amount of damages exceeds $75,000. 28 U.S.C. 1332(a). If it appears from the pleadings or other evidence to a "legal certainty that the claim is really for less" than that required for diversity jurisdiction, and the plaintiff cannot refute the evidence, the federal suit should be dismissed. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir.1971).  More importantly, the failure of plaintiff to meeting the amount of controversy requirement to a "legal certainty" vitiates

the court's subject matter jurisdiction.

1.    Alternatively, The Forum and Choice of Law Selection
      Clause in the Contract Required Plaintiff to File
      his Lawsuit in California and Not in the District of Columbia.

Plaintiff alleges that the contract attached as an exhibit to his complaint, although not executed by plaintiff is the basis for his lawsuit. The contract has a choice of law and forum selection provision that mandates any lawsuit be filed in and under California law. See Pl.'s Cmplt. Ex. 1, ¶ 14. Therefore, as a matter of law, this court should respect the contract that Plaintiff seeks enforced despite its flaws that give rise to separate meritorious defenses to defendants. However, when there is a valid forum selection clause in place, the Court must defer to the expressed intent of the parties unless plaintiff can demonstrate that enforcement would be unjust or that the contract is invalid due to fraud or overreaching. *See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).*

The burden of invalidating a forum selection clause is heavy. See *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 591-92 (1991) (commenting that a court is unlikely to set aside a forum selection clause even when the designated forum is remote). For the reasons state herein, this court should vacate the judgment against Defendants and have this matter transferred to the District of California.

**CONCLUSION**

For the foregoing reasons, Defendants', Capitol Reprographics, LLC and Lucas Mageno, respectfully request that this Court vacate the default judgment entered against them for failure to answer on June 28, 2007 and vacate the default judgment entered on July 20, 2007, then dismiss this matter for lack of jurisdiction.

Respectfully submitted,

**LAW OFFICES OF ATHAN T. TSIMPEDES**

**BY: ____/s/_____**                        **Dated: July 16, 2008.**
   **Athan T. Tsimpedes**

**11 Dupont Circle, NW**
**Suite 500**
**Washington, DC 20036**
**202-638-2100**
**atsimpedes@comcast.net**
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Joint Motion to Vacate Default Judgment, Memorandum of Points and Authorities in Support Thereof, Answer, and a Proposed Order were served on this 16th day of July 2008, and additionally was served by email and first-class mail, postage prepaid, on Plaintiffs counsel on this same date, at the following addresses:

Rand L. Gelber
One Church Street
Suite 802
Rockville, MD 20850
Attorney for Plaintiff Robert Gillespie

_____/s/_____
Athan T. Tsimpedes, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBERT GILLESPIE              )
                                      )
     Plaintiff,             )
                                      ) Civil Action No. 06-2175(ESH)
                                        )
v.                           )
                                        )
CAPITOL REPROGRAPHICS, LLC   )
 and                      )
                                        )
LUCAS MAGENO               )
                                        )
     Defendants.         )
_____)

## ORDER

UPON CONSIDERATION of Defendants' Joint Motion to Vacate Entry and Judgment of Defaults and the accompanying documents including the Defendants' Answer, and any Opposition thereto, it is this _____ day of _____, 2008 hereby GRANTED; and it is

**ORDERED,** that the Default Judgment entered against Lucas Mageno is vacated; and it is further

**ORDERED**, that the Default Judgment entered against Capitol Reprographics, LLC is vacated; and it is further

**ORDERED,** that this court does not have subject matter jurisdiction pursuant to 28 U.S.C. 1332 because Plaintiff's failed to establish the amount of controversy exceeded $75,000.00 to a the "legal certainty" and therefore this matter is dismissed; or alternatively,

**ORDERED**, that this court is not the proper venue and that this matter shall be transferred to the proper venue in the District of California.

 

_____
JUDGE, United States District Court
       for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF THE DISTRICT OF COLUMBIA

Robert Gillespie,                                    Case No. 1:06-cv-02175-ESH

                                      Plaintiff,

     *v.*                                            Hon. Ellen S. Huvelle

Capitol Reprographics, LLC; and Lucas
Mageno,

     Defendants.

### DECLARATION OF JOHN H. CARMICHAEL
### IN SUPPORT OF
### DEFENDANTS' JOINT MOTION TO VACATE DEFAULT AND
### DEFAULT JUDGMENT AND DISMISS FOR WANT OF
### JURISDICTION

I, John H. Carmichael, a resident of California and an attorney licensed and maintaining an office in California, state as follows:

1. I have been counsel to Capitol Reprographics, LLC since 1998. I have acted as general corporate and litigation counsel for the company. Unfortunately, over the past year and a half, the company has failed. Comerica Bank called a $2,000,000 loan and effectively forced the liquidation of the assets of the company and to a certain extent, froze the assets of the company founders, defendant Lucas Mageno and John Stacey. Right in the middle of this major legal challenge, which involved the sale of multiple assets, litigation with the bank, a receivership, entertaining multiple offers to purchase what was left of the company, and laying off or finding other work for 120 employees, the plaintiff in this action filed a lawsuit alleging the company's failure to pay him a profit sharing component of his compensation in the outrageous amount set forth in the default judgment. Not only is the allegation of the withholding of "profits" implausible – in light of the failure of the entire company – the allegations are improbably maintained and contain

numerous factual errors.

2.      When I first learned of this matter some weeks after it was filed, I sent plaintiff's counsel a letter of representation. We subsequently discussed the matter cordially on our first occasion speaking on the telephone. I knew the company was in trouble, but I did not know the full extent of it. For example, I did not know at that time the entire company was about to take a swift and steep plunge into receivership and liquidation. The legal and financial chaos that engulfed this mid-sized business was so significant and the funds so short, that I essentially worked for free for months on the various matters facing the company, as there was no money for legal fees, certainly no money to hire counsel in Washington D.C.

3.      Plaintiff's counsel and I spoke a second time as I called him to explain what was happening, explore settlement, and essentially get the case on track. This time the conversation was not cordial. Plaintiff's counsel yelled at me and told me "the only thing he wanted to hear from me was an offer" and slammed down the phone.

4.      At that point, I decided I should check the docket on PACER and get ready to take some action on behalf of Capitol and Mr. Mageno. When I checked the docket on PACER shortly thereafter, I saw that the case was *dismissed*. I assumed that if the plaintiff endeavored to file any sort of remedial motion, I would be served and I would respond in due course.

5.      I never received anything from plaintiff's counsel regarding a motion to re-instate the case after failure to prosecute, or any subsequent filings relating to the request for default or any motions whatsoever.

6.      Apparently, plaintiff's counsel was serving Capitol Reprographics

and Mr. Mageno instead at an address provided by plaintiff in Sacramento. At that time, the company was in receivership, there were only one or two employees on site in Sacramento, the location was up for sale (and in fact did sell to a new owner as a going concern), and the company founders were busy fighting off foreclosure of their personal assets (a fight which continues to this day.)

        7.    I am terribly sorry for causing this Court any inconvenience and I would request an opportunity on behalf of Mr. Mageno and Capitol to defend themselves (and hopefully come to an early, amicable resolution), instead of suffering the crippling blow of a default judgment in the midst of the business failure at large. I would respectfully note that the plaintiff was given an opportunity to "fight another day" by this Court, but did not give the defendants' counsel – with whom plaintiff's counsel had spoken with _twice_ about the matter – notice of that fact. I would request the same pardon from this Court, and will personally ensure there are no further procedural difficulties, along with the welcome assistance of competent defense counsel that practices routinely in this Court's judicial district.

        Signed under penalty of perjury under the laws of the United States this 9th day of July, 2008.

                                        John H. Carmichael, Esq.

                                        Law Office of John H. Carmichael
                                        269 South Beverly Drive, Ste. 395
                                        Beverly Hills, California 90212
                                        (310) 367-5432 (voice)
                                        (310) 792-8625 (telecopier)
                                        jhclaw@gmail.com
                                        *Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ROBERT GILLESPIE            )
                                  )
      Plaintiff,           )
                                  ) Civil Action No. 06-2175(ESH)
                                  )
v.                           )
                                  )
CAPITOL REPROGRAPHICS, LLC   )
 and                           )
                                  )
LUCAS MAGENO            )
                                  )
      Defendants.        )
_____)

**CAPITOL REPROGRAPHICS VERIFIED ANSWER IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO VACATE DEFAULT JUDGMENT**

Defendant Capitol Reprographics, LLC ("Capitol"), in support of Defendants' Joint

Motion to Vacate Default Judgment and Stay Proceedings During Receivership,

provides the following Verified Answer, to be supplemented as documents become

available following termination of its receivership:

**COMPLAINT**

       Plaintiff Robert Gillespie ("Gillespie"), by and through his
attorney, Rand L. Gelber, Esquire, and for his Complaint
against Defendants Capitol Reprographics, LLC ("Capitol
Reprographics") and Lucas Mangeno [sic], individually and
trading as Capitol Digital Document Solutions, LLC ("Capitol
Digital"), and states as follows:

**ANSWER:**     Defendant Capitol has been informed, but does not have personal

knowledge, that plaintiff is represented by Rand L. Gelber. Defendant Capitol

acknowledges that this complaint, on its face, appears to concern Lucas Mageno.

Defendant Capitol notes that defendant Mageno's name was misspelled consistently

in body of the Complaint, although it is spelled correctly in the caption. Defendant

Capitol denies knowledge of such any entity or trade name as "Capitol Digital

Document Solutions, LLC," and denies trading under such a name.

## JURISDICTION

    1.  The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1332, as the matter in controversy exceeds, exclusive of interest and costs, the sum or value of ($75,000.00) and the parties are diverse.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer

is required. Nonetheless, defendant Capitol admits that the parties are completely

diverse, but denies that the amount in controversy exceeds the sum or value of

$75,000.00.

## VENUE

    2.  This case is properly before the United States District Court for the District of Columbia, because the events giving rise to Plaintiff's claims occurred in the District of Columbia and the Defendant, Capitol Reprographics, LLC, is a California limited liability company with authority to transact business in the District of Columbia, and Defendant Lucas Mangeno [sic], trading as Capitol Digital Document Solutions, LLC, is transacting business in the District of Columbia.

**ANSWER:**    Insofar as any part of this allegation calls for a legal conclusion,

such conclusion requires no answer. Defendant Capitol admits that the events in

question occurred in the District of Columbia; admits defendant Capitol is a

California limited liability company with authority to transact business in the

District of Columbia; denied that defendant Lucas Mageno has transacted business

in the District of Columbia, through Capitol; and denies that defendant Lucas

Mageno "trade[s] as" Capitol Digital Document Solutions, LLC.

## PARTIES

    3.  Plaintiff Gillespie is, and at all time relevant, a

resident of the State of Maryland.

**ANSWER:**    Defendant Capitol has no direct knowledge of this allegation and

therefore denies it.

>    4.    Defendant Capitol Reprographics, LLC, is, and at all
> times relevant, a California Limited Liability Company
> registered to do business in the District of Columbia. Upon
> investigation, Capitol Reprographics appears to be a parent
> company of Capitol Digital Document Solutions, LLC, an
> unformed entity.

**ANSWER:**    Defendant Capitol admits the allegations in the first sentence.

Defendant Capitol denies all allegations in the second sentence.

>    5.    Defendant Lucas Mangeno, trading as Capitol
> Digital Document Solutions, LLC, is believed to be, at all
> relevant times listed below, a resident of the State of California
> and transacts business in the District of Columbia at 1325 G
> Street, NW, 1st Floor, Washington, DC 20005.

**ANSWER:**    Defendant Capitol, on information and belief, admits all allegations

in this paragraph *except* the allegations that defendant Lucas Mageno "trad[es] as

Capitol Digital Document Solutions, LLC," and that defendant Lucas Mageno

"transacts business in the District of Columbia" as a natural person, which are

denied.


**FACTS**

>    6.    On November 1, 2003, Plaintiff and Defendant Lucas
> Mageno, trading as Capitol Digital, entered into an
> Employment Agreement ("Agreement"), a copy of which is
> attached hereto and incorporated herein by reference as
> Exhibit #1, whereby Plaintiff would be employed as Director of
> Client Services for Defendant Lucas Mangeno's Capitol
> Digital's Washington, D.C. office.

**ANSWER:**    Denied on the basis that Lucas Mageno did not "trad[e] as Capitol

Digital." Defendant Capitol further states that the attached document speaks for

itself, and admits that the attached document appears to concern the employment of

Plaintiff at Capitol's Washington, D.C. office, and otherwise refers to the text of said

document for all relevant facts.

> 7.   As Defendant Lucas Mangeno and Capital [sic] Digital's employee, Plaintiff was responsible for day-to-day operations of Capitol Digital's Washington, D.C. office on a full-time and "best efforts" basis as an at will employee.

**ANSWER:**    Denied as to all assertions concerning Lucas Mageno, who did not personally employ Plaintiff. Defendant Capitol avers that the document referenced in paragraph 6 of the Complaint speaks for itself concerning all other allegations in paragraph 7.

> 8.   Pursuant to the Agreement, in addition to a monthly salary, Plaintiff would receive a ten percent (10%) commission on all sales over Twenty Thousand Dollars ($20,000.00) in each month. Paragraphs 4 and 9 of the Agreement also provide that Plaintiff would receive a five percent (5%) profit sharing program that would begin accumulating from the beginning of his employment.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

> 9.   On March 8, 2006, Plaintiff resigned from his position at Capitol Digital.

**ANSWER:**    To the best knowledge of defendant Capitol Reprographics, LLC, this allegation is substantially true.

> 10.   Paragraph 9 of the Agreement states that Defendants would pay Plaintiff  five percent (5%) of net profits on an annual basis to be paid to Plaintiff in the subsequent year on a quarterly basis.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

11.    Paragraph 9 of the Agreement further provides that net profits are defined as revenue actually received by Defendants as a result of sales on a cash rather than accrual basis, less all operating expenses attributable to Capitol Digital's Washington, D.C. office.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

12.    Paragraph 14 of the Agreement states that the party prevailing in any dispute arising out of or relating to the Agreement shall be awarded attorney's fees and costs.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

13.    Plaintiff re-alleges paragraphs 1 through 12 as if fully set forth herein and alleges further:

**ANSWER:**    Defendant Capitol Reprographics repeats its answers to paragraphs 1 through 12 as if fully set forth at this point.

14.    Pursuant to the Agreement, Plaintiff was to receive five percent (5%) of  the net profits for the calendar years 2004 and 2005.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

15.    It is believed and therefore averred that Defendants have failed to pay Plaintiff his five percent (5%) share of the

net profits of the company for calendar years 2004 and 2005.

**ANSWER:**    Insofar as this allegation calls for a legal conclusion, no answer is required. Notwithstanding legal conclusions included in or implied by this allegation, defendant Capitol Reprographics denies all factual allegations contained in this allegation. Without limitation, Capitol Reprographics further avers that, through its Managing Director Doug Batcheller, Capitol did in fact disclose to Plaintiff, prior to his resignation, that Plaintiff's share of profits for 2004 and 2005 under the contract was approximately $15,000; that Capitol was prepared to tender such amount immediately; and that Plaintiff rejected such tender.

16.   Defendants have breached the terms of the Agreement.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation.

17.   As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages and incurred costs in an amount to be determined at trial.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and prays that the following relief be awarded to Plaintiff:

(a)   for compensatory and consequential damages against Defendants for breach of contract;

(b)   for Plaintiff's attorney's fees and costs in this action pursuant to Paragraph 14 of the Agreement between Plaintiff and Defendants;

(c)    for an order requiring Defendants to produce supporting documentation and information necessary to verify the accuracy of any calculations or estimations of Plaintiff's share of net profits;

(d)    for such other and further relief as is deemed appropriate.

**ANSWER:**    Defendant Capitol denies that plaintiff is due any relief on the basis of this Complaint. Defendant Capitol specifically and additionally denies that it has any liability for purported consequential damages to Plaintiff, and denies that there exists any basis in law or fact for requiring defendant to pay Plaintiff's attorney's fees in an action of this nature based upon the employment agreement at issue.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Capitol denies any factual assertion contained in this allegation.

## AFFIRMATIVE DEFENSES ASSERTED BY
## DEFENDANT CAPITOL REPROGRAPHICS, LLC

Defendant Capitol Reprographics, LLC, asserts the following affirmative defenses, to be supplemented as documents become available during discovery and following termination of its receivership:

1.    Plaintiff is barred from any recovery by the doctrine of unclean hands.

2.    Plaintiff is barred from any recovery by the doctrines of laches, waiver, and/or estoppel.

3.    Plaintiff is barred from any recovery because he refused tender of all amounts due him by contract.

4.    Plaintiff is barred from any recovery because any recovery potentially due

him is subordinate to and dependent upon amounts remaining after satisfaction of more-senior obligations.

5. Plaintiff failed to mitigate his damages, and any recovery he might otherwise be due must be reduced accordingly.

Respectfully submitted,

LAW OFFICES OF ATHAN T. TSIMPEDES

BY: ____/s/_____                Dated: July 16, 2008.
     Athan T. Tsimpedes

11 Dupont Circle, NW
Suite 500
Washington, DC 20036
202-638-2100
atsimpedes@comcast.net
Attorney for Defendants

## Verification

I, Lucas Mageno, have read the Answer prepared on behalf of Capitol Reprographics, LLC, and declare under penalty of perjury under the laws of the United States, that the contents contained in that Answer are true and correct.

Signed this 8th day of July in California.

Lucas Mageno (for Capitol Reprographics, LLC)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **ROBERT GILLESPIE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 06-2175(ESH)** |
| | ) |
| **v.** | ) |
| | ) |
| **CAPITOL REPROGRAPHICS, LLC** | ) |
| **and** | ) |
| | ) |
| **LUCAS MAGENO** | ) |
| | ) |
| **Defendants.** | ) |

_____)

### VERIFIED ANSWER OF LUCAS MAGENO IN SUPPORT OF HIS MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT

Defendant Lucas Mageno ("Mageno"), in support of Defendants' Joint Motion to Vacate Default Judgment and Stay Proceedings During Receivership, provides the following Verified Answer, to be supplemented as documents become available following termination of defendant Capitol Reprographics, LLC's receivership:

### COMPLAINT

Plaintiff Robert Gillespie ("Gillespie"), by and through his attorney, Rand L. Gelber, Esquire, and for his Complaint against Defendants Capitol Reprographics, LLC ("Capitol Reprographics") and Lucas Mangeno [sic], individually and trading as Capitol Digital Document Solutions, LLC ("Capitol Digital"), and states as follows:

**ANSWER:**    Defendant Mageno has been informed, but does not have personal knowledge, that plaintiff is represented by Rand L. Gelber. Defendant Mageno acknowledges that this complaint, on its face, appears to concern Capitol Reprographics, LLC ("Capitol"). Defendant Mageno notes that defendant Mageno's name was misspelled consistently in body of the Complaint, although it is spelled

correctly in the caption. Defendant Mageno denies knowledge of such any entity or trade name as "Capitol Digital Document Solutions, LLC," and denies trading under such a name.

## JURISDICTION

1.  The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1332, as the matter in controversy exceeds, exclusive of interest and costs, the sum or value of ($75,000.00) and the parties are diverse.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Nonetheless, defendant Mageno admits that the parties are completely diverse, but denies that the amount in controversy exceeds the sum or value of $75,000.00.

## VENUE

2.  This case is properly before the United States District Court for the District of Columbia, because the events giving rise to Plaintiff's claims occurred in the District of Columbia and the Defendant, Capitol Reprographics, LLC, is a California limited liability company with authority to transact business in the District of Columbia, and Defendant Lucas Mangeno [sic], trading as Capitol Digital Document Solutions, LLC, is transacting business in the District of Columbia.

**ANSWER:**    Insofar as any part of this allegation calls for a legal conclusion, such conclusion requires no answer. Defendant Mageno admits that the events in question occurred in the District of Columbia; admits defendant Capitol is a California limited liability company with authority to transact business in the District of Columbia; denies that defendant Lucas Mageno has transacted business in the District of Columbia, through Capitol; and denies that defendant Lucas Mageno "trade[s] as" Capitol Digital Document Solutions, LLC.

## PARTIES

3.   Plaintiff Gillespie is, and at all time relevant, a resident of the State of Maryland.

**ANSWER:**   Defendant Mageno has no direct knowledge of this allegation and therefore denies it.

4.   Defendant Capitol Reprographics, LLC, is, and at all times relevant, a California Limited Liability Company registered to do business in the District of Columbia. Upon investigation, Capitol Reprographics appears to be a parent company of Capitol Digital Document Solutions, LLC, an unformed entity.

**ANSWER:**   Defendant Mageno admits the allegations in the first sentence.

Defendant Mageno denies all allegations in the second sentence.

5.   Defendant Lucas Mangeno, trading as Capitol Digital Document Solutions, LLC, is believed to be, at all relevant times listed below, a resident of the State of California and transacts business in the District of Columbia at 1325 G Street, NW, 1st Floor, Washington, DC 20005.

**ANSWER:**   Defendant Mageno admits that he is a resident of the State of California. Defendant Mageno denies all other allegations in this paragraph.

## FACTS

6.   On November 1, 2003, Plaintiff and Defendant Lucas Mageno, trading as Capitol Digital, entered into an Employment Agreement ("Agreement"), a copy of which is attached hereto and incorporated herein by reference as Exhibit #1, whereby Plaintiff would be employed as Director of Client Services for Defendant Lucas Mangeno's Capitol Digital's Washington, D.C. office.

**ANSWER:**   Denied. Defendant Mageno further states that the attached document speaks for itself, and admits that the attached document appears to concern the employment of Plaintiff at Capitol's Washington, D.C. office by defendant Capitol and not by Mageno, and otherwise refers to the text of said document for all relevant facts.

7.    As Defendant Lucas Mangeno and Capital [sic] Digital's employee, Plaintiff was responsible for day-to-day operations of Capitol Digital's Washington, D.C. office on a full-time and "best efforts" basis as an at will employee.

**ANSWER:**    Denied as to all assertions concerning Lucas Mageno, who did not personally employ Plaintiff. Defendant Mageno avers that the document referenced in paragraph 6 of the Complaint speaks for itself concerning all other allegations in paragraph 7.

8.    Pursuant to the Agreement, in addition to a monthly salary, Plaintiff would receive a ten percent (10%) commission on all sales over Twenty Thousand Dollars ($20,000.00) in each month. Paragraphs 4 and 9 of the Agreement also provide that Plaintiff would receive a five percent (5%) profit sharing program that would begin accumulating from the beginning of his employment.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Mageno denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

9.    On March 8, 2006, Plaintiff resigned from his position at Capitol Digital.

**ANSWER:**    To the best knowledge of defendant Mageno, this allegation is substantially true.

10.    Paragraph 9 of the Agreement states that Defendants would pay Plaintiff  five percent (5%) of net profits on an annual basis to be paid to Plaintiff in the subsequent year on a quarterly basis.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Mageno denies any factual assertion contained in this allegation, and asserts that the document referred to in the allegation speaks for itself.

11.    Paragraph 9 of the Agreement further provides that net profits are defined as revenue actually received by

Defendants as a result of sales on a cash rather than accrual
basis, less all operating expenses attributable to Capitol
Digital's Washington, D.C. office.

**ANSWER:**      This allegation calls for a legal conclusion, and therefore no answer

is required. Notwithstanding its legal nature, defendant Mageno denies any factual

assertion contained in this allegation, and asserts that the document referred to in

the allegation speaks for itself.

12.   Paragraph 14 of the Agreement states that the party
prevailing in any dispute arising out of or relating to the
Agreement shall be awarded attorney's fees and costs.

**ANSWER:**      This allegation calls for a legal conclusion, and therefore no answer

is required. Notwithstanding its legal nature, defendant Mageno denies any factual

assertion contained in this allegation, and asserts that the document referred to in

the allegation speaks for itself.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

13.   Plaintiff re-alleges paragraphs 1 through 12 as if
fully set forth herein and alleges further:

**ANSWER:**      Defendant Mageno repeats its answers to paragraphs 1 through 12

as if fully set forth at this point.

14.   Pursuant to the Agreement, Plaintiff was to receive
five percent (5%) of  the net profits for the calendar years 2004
and 2005.

**ANSWER:**      This allegation calls for a legal conclusion, and therefore no answer

is required. Notwithstanding its legal nature, defendant Mageno denies any factual

assertion contained in this allegation, and asserts that the document referred to in

the allegation speaks for itself.

15.   It is believed and therefore averred that Defendants
have failed to pay Plaintiff his five percent (5%) share of the
net profits of the company for calendar years 2004 and 2005.

**ANSWER:**    Insofar as this allegation calls for a legal conclusion, no answer is required. Notwithstanding legal conclusions included in or implied by this allegation, defendant Mageno denies all factual allegations contained in this allegation.

>    16.    Defendants have breached the terms of the Agreement.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Mageno denies any factual assertion contained in this allegation.

>    17.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages and incurred costs in an amount to be determined at trial.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Mageno denies any factual assertion contained in this allegation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and prays that the following relief be awarded to Plaintiff:

>    (a)    for compensatory and consequential damages against Defendants for breach of contract;

>    (b)    for Plaintiff's attorney's fees and costs in this action pursuant to Paragraph 14 of the Agreement between Plaintiff and Defendants;

>    (c)    for an order requiring Defendants to produce supporting documentation and information necessary to verify the accuracy of any calculations or estimations of Plaintiff's share of net profits;

>    (d)    for such other and further relief as is deemed appropriate.

**ANSWER:**    Defendant Mageno denies that plaintiff is due any relief against him

on the basis of this Complaint. Defendant Mageno specifically and additionally denies that he has any liability for purported consequential damages to Plaintiff, and denies that there exists any basis in law or fact for requiring defendant to pay Plaintiff's attorney's fees in an action of this nature based upon the employment agreement at issue.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**ANSWER:**    This allegation calls for a legal conclusion, and therefore no answer is required. Notwithstanding its legal nature, defendant Mageno denies any factual assertion contained in this allegation.

## AFFIRMATIVE DEFENSES ASSERTED BY
## DEFENDANT LUCAS MAGENO

Defendant Lucas Mageno asserts the following affirmative defenses, to be supplemented as documents become available during discovery and following termination of its receivership:

1.    Plaintiff is barred from any recovery by the doctrine of unclean hands.

2.    Plaintiff is barred from any recovery by the doctrines of laches, waiver, and/or estoppel.

3.    Plaintiff is barred from any recovery because he refused tender of all amounts due him by contract.

4.    Plaintiff is barred from any recovery because any recovery potentially due him is subordinate to and dependent upon amounts remaining after satisfaction of more-senior obligations.

5.    Plaintiff failed to mitigate his damages, and any recovery he might otherwise be due must be reduced accordingly.

6.    Plaintiff's resignation without adequate notice breached the terms of the employment contract and caused substantial damages, which must be set off against any recovery.

7.    Mageno is not subject to the personal jurisdiction of this Court because he is a mere officer of the corporate entity that appears to have actually employed Plaintiff.

8.    Mageno has no personal liability to plaintiff.

9.    Mageno has no personal liability for damages arising from any alleged breach of contract by the corporate defendant Capitol Reprographics, LLC.

10.    Mageno has no personal liability for any other form of relief or damages arising from or related to any alleged breach of contract by the corporate defendant Capitol Reprographics, LLC.

11.    The complaint fails to state a claim against Mageno for which relief can be granted.

12.    The complaint fails to properly invoke the diversity jurisdiction of this Court.


Respectfully submitted,


LAW OFFICES OF ATHAN T. TSIMPEDES

BY: ____/s/_____            Dated: July 16, 2008.
        Athan T. Tsimpedes

11 Dupont Circle, NW
Suite 500
Washington, DC 20036
202-638-2100
atsimpedes@comcast.net
Attorney for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT GILLESPIE                           )
11159 POND FOUNTAIN COURT                  )
NEW MARKET, MARYLAND 21774                 )
                                       )
    Plaintiff,           )
                                       )
                                       )
    vs.                  )          Case No.
                                       )
                                       )
CAPITOL REPROGRAPHICS, LLC                 )
615 LAS TUNAS #X                           )
TEMPLE CITY, CALIFORNIA 91780              )
                                       )
Serve: Registered Agent                    )
    Lucas Mageno         )
    1800 Avenue of the Stars )
    Suite 1150           )
    Los Angeles, CA 95831 )
                                       )
    and                  )
                                       )
LUCAS MAGENO, INDIVIDUALLY                 )
ANDTRADING AS CAPITOL DIGITAL              )
DOCUMENT SOLUTIONS, LLC                    )
555 CAPITOL MALL                           )
SUITE 540                                  )
SACRAMENTO, CA 95831                       )
                                       )
Serve: Registered Agent                    )
    Lucas Mageno         )
    1325 G Street, NW    )
    1st Floor            )
    Washington, DC 20005 )
                                       )
    Defendants           )

## COMPLAINT

Plaintiff Robert Gillespie ("Gillespie"), by and through his attorney, Rand L.

Gelber, Esquire, and for his Complaint against Defendants Capitol Reprographics, LLC

("Capitol Reprographics") and Lucas Mangeno, individually and trading as Capitol Digital Document Solutions, LLC ("Capitol Digital"), and states as follows:

### JURISDICTION

1.      The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1332, as the matter in controversy exceeds, exclusive of interest and costs, the sum or value of ($75,000.00) and the parties are diverse.

### VENUE

2.      This case is properly before the United States District Court for the District of Columbia, because the events giving rise to Plaintiff's claims occurred in the District of Columbia and the Defendant, Capitol Reprographics, LLC, is a California limited liability company with authority to transact business in the District of Columbia, and Defendant Lucas Mangeno, trading as Capitol Digital Document Solutions, LLC, is transacting business in the District of Columbia..

### PARTIES

3.      Plaintiff Gillespie is, and at all time relevant, a resident of the State of Maryland.

4.      Defendant Capitol Reprographics, LLC, is, and at all times relevant, a California Limited Liability Company registered to do business in the District of Columbia.  Upon investigation, Capitol Reprographics appears to be a parent company of Capitol Digital Document Solutions, LLC, an unformed entity.

5.      Defendant Lucas Mangeno, trading as Capitol Digital Document Solutions, LLC, is believed to be, at all relevant times listed below, a resident of the State of California and transacts business in the District of Columbia at 1325 G Street, NW, 1st

Floor, Washington, DC 20005.

**FACTS**

6. On November 1, 2003, Plaintiff and Defendant Lucas Mageno, trading as Capitol Digital, entered into an Employment Agreement ("Agreement"), a copy of which is attached hereto and incorporated herein by reference as Exhibit #1, whereby Plaintiff would be employed as Director of Client Services for Defendant Lucas Mangeno's Capitol Digital's Washington, D.C. office.

7. As Defendant Lucas Mangeno and Capital Digital's employee, Plaintiff was responsible for day-to-day operations of Capitol Digital's Washington, D.C. office on a full-time and "best efforts" basis as an at will employee.

8. Pursuant to the Agreement, in addition to a monthly salary, Plaintiff would receive a ten percent (10%) commission on all sales over Twenty Thousand Dollars ($20,000.00) in each month. Paragraphs 4 and 9 of the Agreement also provide that Plaintiff would receive a five percent (5%) profit sharing program that would begin accumulating from the beginning of his employment.

9. On March 8, 2006, Plaintiff resigned from his position at Capitol Digital.

10. Paragraph 9 of the Agreement states that Defendants would pay Plaintiff five percent (5%) of net profits on an annual basis to be paid to Plaintiff in the subsequent year on a quarterly basis.

11. Paragraph 9 of the Agreement further provides that net profits are defined as revenue actually received by Defendants as a result of sales on a cash rather than

accrual basis, less all operating expenses attributable to Capitol Digital's Washington, D.C. office.

12.   Paragraph 14 of the Agreement states that the party prevailing in any dispute arising out of or relating to the Agreement shall be awarded attorney's fees and costs.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

13.   Plaintiff re-alleges paragraphs 1 through 12 as if fully set forth herein and alleges further:

14.   Pursuant to the Agreement, Plaintiff was to receive five percent (5%) of the net profits for the calendar years 2004 and 2005.

15.   It is believed and therefore averred that Defendants have failed to pay Plaintiff his five percent (5%) share of the net profits of the company for calendar years 2004 and 2005.

16.   Defendants have breached the terms of the Agreement.

17.   As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages and incurred costs in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants, and prays that the following relief be awarded to Plaintiff:

(a) for compensatory and consequential damages against Defendants for breach of contract;

(b) for Plaintiff's attorney's fees and costs in this action pursuant to

Paragraph 14 of the Agreement between Plaintiff and Defendants;

(c) for an order requiring Defendants to produce supporting documentation and information necessary to verify the accuracy of any calculations or estimations of Plaintiff's share of net profits;

(d) for such other and further relief as is deemed appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: November 20, 2006

Respectfully submitted,

/s/ Rand L. Gelber

_____

Rand L. Gelber, Esquire (#8663)
One Church Street
Suite 802
Rockville, Maryland 20850
(301) 251-0202
(301) 251-0849 (facsimile)

*Attorney for Plaintiff,*
*Robert Gillespie*

# EMPLOYMENT AGREEMENT

### BETWEEN CAPITOL DIGITAL DOCUMENT SOLUTIONS, LLC AND ROBERT GILLESPIE

This Employment Agreement (the "Agreement") is made and entered into as of November 1, 2003 by and between Capitol Digital Document Solutions, LLC a California limited liability company, having an address of 555 Capitol Mall Suite #540 Sacramento, California, 95831 ("Company"), and Robert Gillespie (Employee).

R E C I T A L S:

A.     Company is a document service enterprise in the business of document copying, imaging, storage, retrieval, coding, electronic discovery and other related services. Employee is experienced in the sale and delivery of such services.

B.     Company desires to employ Employee and Employee desires to be employed by Company for the purposes and on the terms and conditions set forth in this Agreement.

C.     This Agreement replaces and supersedes in their entirety any and all prior agreements, express or implied, written or oral, performed or unperformed, pertaining to the employment of Employee and the compensation to be paid to him therefore, and all such prior agreements and understandings are hereby terminated and shall be of no further force or effect.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Employee agree as follows:

1. Employment: Company hereby employs Employee as ***Director of Client Services, Washington D.C., Capitol Digital Document Solutions, LLC,*** for the purposes and on the terms and conditions set forth in this Agreement. Employee's duties shall be to (i) identify clients or customers in the market for document services in the Territory defined in Exhibit A hereto, sell the services and products provided by the Company and (ii) perform and/or supervise the performance and delivery of those services, subject to the policy guidelines and directives which are provided to him by Company from time to time during the term of this Agreement. Employee shall have no authority to bind or obligate Company to any financial commitment, including entering leases or the borrowing of any monies on a secured or unsecured basis, without obtaining the prior written authorization of



Company as to the specific transaction. Employee shall have limited authority to bind or obligate the Company for matters necessary to the day to day operation of the Washington D.C. office for such items as, without limitation, contracts for supplies, vendor services or sub-contractor services as determined by the best business judgment of Employee.  Employee's duties also shall include such other matters or responsibilities as Company and Employee may jointly agree upon from time to time during the term of this Agreement.

Employee's employment is on a full-time and "best efforts" basis meaning that during the term of this Agreement, Employee shall not accept any full or part-time employment, including without limitation as an independent consultant, without the prior written consent of Company, which may not be unreasonably withheld. Employee shall devote his full energies, interests, abilities, and productive time to the performance of his duties and responsibilities under this Agreement.  During the term of this Agreement, Employee shall not, directly or indirectly, whether as a partner, employee, creditor, and shareholder or otherwise, promote, participate or engage in any activity or other business competitive with Company's businesses. Notwithstanding the foregoing, Employee may participate in personal investments to the full extent desired by Employee so long as such personal investment activity does not detract from Employee's ability to devote his full energies and productive interests to the performance of his duties and responsibilities under this Agreement.

Employee will commence employment with the Company on a date mutually agreeable to both the Employee and the Company.  Until commencement of employment, any provisions of this Agreement bind neither the Company nor the Employee.

2.   Term of Employment:  Employee and Company acknowledges and agrees Employees term of employment is "at will" and Employee may resign from Company at any time for any reason. Company may terminate Employee at any time for any reason.

   a.   Termination:  This Agreement and Employee's employment shall be terminated upon the first to occur of any of the following:  (a) mutual agreement of the parties; (b) Employee's death or Disability; (c) termination by the Company; (d) Employee's resignation.

   b.   "Disability" for purposes of this agreement shall mean physical or mental disability to the extent that Employee becomes disabled for more than sixty (60) consecutive days or ninety (90) days in the aggregate in any 12-month period such that he is unable to perform his duties on a full-time basis.

3. Compensation: Employee shall receive a monthly salary of $4,166.66. The salary shall be paid on the regular paydays established by the Company. Currently the Company's paydays are the 5th. and the 20th. Of each month. Also, **[Was there something written here?]** SORRY, NO.

4. Commissions: Employee shall receive a 10% commission on all personal sales over $20,000 in any given month. Company also agrees to allow Employee to obtain a 5% profit sharing program that will begin accumulating from day one. This will be paid out after the first quarter of the first year and will be paid in increments of ¼ of total profits after taxes every 90 days for the remaining period of his employment with Company. Company's pay period is calculated on the calendar month. Commissions will be paid to the Employee on the Company's first payday of the second month in which the commission was earned. The salary and sales commission payments by Company are subject to such normal deductions and withholdings as Company may from time to time be required to make pursuant to applicable law, governmental regulation or order. An override of 1% on the entire office will be paid to the employee on a monthly basis. Also the Company agrees to revisit the compensation package after the first six months of employment and grant a potential increase dependent upon performance. **[Are commissions from the previous month paid on the 5th or 20th of the following month?]** EX: JAN. to REVENUE PAID MARCH 5th. (In)

5. Vacations, Training and Conferences: Employee shall be entitled to ten (10) working days and (5) paid holidays during each calendar year of his employment as paid vacation. Such vacations shall be taken at such time as shall be agreed upon between Employee and the Company. Vacation time will be cumulative from year to year. Absence because of military duties shall not be included for the purpose of vacation, but net payment for military duties shall reduce the Company's salary obligation to the extent thereof. Employee shall attend such meetings, seminars and other postgraduate training sessions as agreed by Employee and the Company. Such activities, training and conferences will not be considered vacation time.

6. Reimbursable Expenses: The Company shall reimburse the employee the following expenses:
   (a) Company shall reimburse Employee for cellular phone expenses 100.00 per month. Submit phone bill with expense report. Employee must provide own phone.
(b) Employee's necessary travel, hotel, and client entertainment expenses incurred in connection with the business of the Company or other events that contributes to the benefit of the company.

(c) Employee's monthly client entertainment expenses (lunches, gifts etc.) should not exceed one (1%) percent of Employees gross monthly sales.

Employee shall submit a monthly expense report to the Company's Controller on the last day of each month for reimbursement by the Company's payday on the 5th day of the following month. Employee shall attach receipts to expense report. Failure of Employee to produce a receipt for a particular expense shall result in no reimbursement paid by Company.

7. <u>Business Automobile</u>: Employee shall be given a 150.00 car allowance. Reimbursement shall be paid to Employee on the 5th day of each month. Company shall provide parking for employee at Company's expense.

8. <u>Benefits</u>:  During the term of his employment and subject to applicable Eligibility requirements of position, tenure, salary, age, health and other Qualifications as may be set forth in Company's employee manual or pursuant to The terms of the applicable benefit provider, Employee shall participate in such benefit plans or programs as are available to Company's other employees, including without limitation medical, dental, health insurance and 401k plan. Employee will be waived from any waiting period for all benefits other than the 401k plan. [**Please provide information regarding coverage and costs for health insurance, particularly family coverage.**] *WILL BE PROVIDED PRIOR TO OPENING. (JM)*

9. <u>Profit Sharing</u>:  Company shall pay Employee 5% of net profits, hereinafter defined, on an annual basis.

1)   Net Profits are defined as revenue actually received by Company as a result of sales by the Washington D.C. Division on a cash rather than accrual basis, less all operating expenses attributable to the Washington D.C. Division including, expenses for rent, telephone, pagers, salaries, consumables, supplies and materials, machine operating costs, insurance, advertising, promotion, business development expenses, administrative costs, allocation to Company for the Washington D.C. Division's share of the joint administrative expense for payroll, payables, receivables, bookkeeping, officers' payroll and expense allocation, the proportional share of taxes paid by members of the Company for the quarter, and the total amount of taxes paid by the Washington D.C. Division of the Company within the subject quarter.

2)   Profits shall be payable beginning on the last day of the first quarter of the first entire year of employment the effective date being the

start date of this agreement with the first payment representing profits, if any, generated during the first three month's operation under this agreement. Each subsequent quarterly profit distribution will be calculated based on the same fifteen-month delay period.

10.  Relationship of Company and Employee.  The relationship of Company and Employee throughout the term of this Agreement shall be that of employer and employee only and no other relationship shall exist between them. Employer shall defend Employee from third party creditors or shareholder cash calls.

11.  Confidentiality.  All agreements, documents, studies, analyses, data, statistics, marketing materials, leads and lead lists developed or prepared by Employee or others in Company's employ during the term of this Agreement shall be and remain confidential and shall be the sole property of Company.  Company will supply Employee with promotional materials.  Employee hereby acknowledges that Company develops and utilizes valuable procedures, confidential information and copyrighted materials, including but not limited to names of customers who may wish to purchase document services, leads and lead lists, studies and analyses, marketing procedures and various brochures and other printed materials, all of which constitute a valuable part of Company's assets built up by Company's ingenuity, time, labor and expense over a period of many years and all of which constitute Company trade secrets.  Employee acknowledges that such information is highly confidential and is not accessible to Company's competitors, and that Company has endeavored to protect the confidentiality of such information over the years.  Accordingly, Employee agrees not to disclose or use, at any time during his employment or at any time thereafter, any of such trade secrets or confidential information belonging to Company in regards to auctions (including but not limited to the names of prospective customers) except as may be required in the performance of his duties for Company, whether or not such secrets or information were developed by Employee or with his/her assistance. Employee agrees that he shall not, at any time during his employment or upon the termination thereof, remove from the premises of Company any documents, photographs, brochures, photocopies, computer disks or other documents or data except as specifically required in the performance of his duties hereunder. Employee agrees not to use any of Company's copyrighted materials, except as may be required in the performance of Employee's duties for Company, so long as the copyright exists.  Employee hereby acknowledges that the restrictions contained herein are reasonable and necessary to protect the legitimate interests of Company, in view of the remedies at law for violation of any of such covenants will be inadequate, that such violation which will cause irreparable injury within a short period of time, and the Company shall be entitled to preliminary and other injunctive relief against such violation, in additional to any other remedies available to Company at law or in equity.

13. Choice of Law; Forum: Any dispute arising out of this agreement or Employee's employment with Company shall be resolved in accordance with statutory and decisional law of the Sate of California.

14. Attorneys' Fees: The party prevailing in any dispute arising out of or relating to this agreement shall be awarded its attorney's fees and costs.

15. Miscellaneous:

(a) Assignment: This Agreement is for the unique personal services of Employee and may not be assigned by Employee without the express written consent of Company and its affiliates. Except as so provided, this Agreement shall be binding upon and inure to the benefit of the respective heirs, personal representatives, successors and assigns of the parties hereto.

(b) Severability: Each provision, sub-provision or term of this Agreement is intended to be severable and shall continue in full force and effect although other provisions herein may be determined invalid or void for any reason.

(c) Entire Agreement; Amendments: This Agreement contains the entire agreement of the parties with respect to the subject matter covered hereby and may be amended, waived or terminated only by an instrument in writing signed by the parties hereto. This Agreement shall be interpreted according to its fair meaning and not for or against the party, which drafted it.

(d) Counterparts: This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.


IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.


**COMPANY**:
Capitol, LLC


By: _____
Name: _LUCAS MAGENT_
Title: _MANAGING PARTNER_

IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA

ROBERT GILLESPIE                                    :
                                                    :
                                                    :
                    Plaintiff,                      :
                                                    :
        v.                                          :        Civil Case No.06-2175 (ESH)
                                                    :
CAPITOL REPROGRAPHICS, LLC                          :
                                                    :
and                                                 :
                                                    :
LUCAS MAGENO                                        :
                                                 :
                    Defendants.                     :
                                                    :
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Plaintiff's Motion for Default Judgment**

COMES NOW the Plaintiff, Robert Gillespie ("Gillespie"), by and through counsel, Rand L. Gelber, and files this Motion for Default Judgment against Capitol Reprographics, LLC ("Capitol") and Lucas Mageno ("Mageno"), pursuant to Rule 55 of the Federal Rules of Civil Procedure, and states as follows:

1. On or about December 20, 2006, the Plaintiff filed a Complaint seeking a judgment against the Defendants for their failure to make payment to the Plaintiff pursuant to an Employment Agreement, a copy of which is attached to the Complaint as Exhibit #1. On April 23, 2007 the Defendants were served personally with the Summons and Complaint. An Order was entered on May 14, 2007 directing the Defendants to respond to the Complaint on or before June 1, 2007.  To date, the Defendants have not filed a response to the Plaintiff's Complaint and are now in default.

2. That a Soldier's and Sailor's Affidavit is attached hereto and incorporated herein by

a reference as Exhibit #1.

3. That the Court's attention is directed to the accompanying Memorandum in support of this Motion.

WHEREFORE, Robert Gillespie respectfully requests this Court grant his Motion for Default Judgment, entering judgment in favor of Robert Gillespie and against Defendants in the amount of $ 196,775.62, together with 6% interest from January 2, 2006, reasonable attorneys' fees and costs of this action, together with such other relief as the Court deems appropriate.

Respectfully submitted,

Dated: June 22, 2007

/s/ Rand L. Gelber

_____

RAND L. GELBER, DC Bar # 370654
1 Church Street, Suite 802
Rockville, Maryland 20850
301-251-0202
Attorney for Plaintiff, Robert Gillespie

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of foregoing Motion for Default Judgment was sent this 22nd day of June, 2007 via first-class mail, postage prepaid, to: Capitol Reprographics, LLC, 555 Capitol Mall, Suite 540, Sacramento, CA 95831 and to Lucas Mageno, 555 Capitol Mall, Suite 540, Sacramento, CA 95831.

/s/ Rand L. Gelber

_____

Rand L. Gelber

IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA

ROBERT GILLESPIE                                    :
                                                    :
                                                    :
                    Plaintiff,                      :
                                                    :
        v.                                          :        Civil Case No.06-2175 (ESH)
                                                    :
CAPITOL REPROGRAPHICS, LLC                          :
                                                    :
and                                                 :
                                                    :
LUCAS MAGENO                                        :
                                                :
                    Defendants.                     :
                                                    :
                                                    :

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Memorandum in Support of Plaintiff's Motion for Default Judgment**

In support of Plaintiff, Robert Gillespie Motion for Default Judgment against Defendants

Capitol Reprographics, LLC and Lucas Mageno submits the following memorandum:

**Factual Background**

Defendant Capitol Reprographics, LLC, is, and at all times relevant, a California

Limited Liability Company registered to do business in the District of Columbia.

Defendant Lucas Mangeno, trading as Capitol Digital Document Solutions, LLC, is

believed to be, at all relevant times listed below, a resident of the State of California and

transacts business in the District of Columbia at 1325 G Street, NW, 1st Floor, Washington,

DC 20005.

On November 1, 2003, Plaintiff and Defendant Lucas Mageno, trading as Capitol

Digital, entered into an Employment Agreement ("Agreement"), a copy of which is attached

to the Complaint as Exhibit #1, whereby Plaintiff would be employed as Director of Client

Services for Defendant Lucas Mangeno's Capitol Digital's Washington, D.C. office.

As Defendant Lucas Mangeno and Capital Digital's employee, Plaintiff was responsible for day-to-day operations of Capitol Digital's Washington, D.C. office on a full-time and "best efforts" basis as an at will employee.

Pursuant to the Agreement, in addition to a monthly salary, Plaintiff would receive a ten percent (10%) commission on all sales over Twenty Thousand Dollars ($20,000.00) in any given month.  Paragraphs 4 and 9 of the Agreement also provide that Plaintiff would receive a five percent (5%) profit sharing program that would begin accumulating from the beginning of employment.

On March 8, 2006, Plaintiff resigned from his position at Capitol Digital.

Paragraph 9 of the Agreement states that Defendants would pay Plaintiff five percent (5%) of net profits on an annual basis to be paid to Plaintiff in the subsequent year on a quarterly basis.

Paragraph 9 of the Agreement further provides that net profits are defined as revenue actually received by Defendants as a result of sales on a cash rather than accrual basis, less all operating expenses attributable to Capitol Digital's Washington, D.C. office.
Paragraph 14 of the Agreement states that the party prevailing in any dispute arising out of or relating to the Agreement shall be awarded attorney's fees and costs.

According to Agreement, Plaintiff was to receive five percent (5%) of the net profits for the calendar years 2004 and 2005.

Defendants have failed to pay Plaintiff his five percent (5%) share of the net profits of the company for 2004 and 2005 and Defendants have breached the terms of the Agreement.

.

As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages and incurred costs as set forth in the affidavit of Plaintiff, and as supported by the Statements

of gross earnings, Defendants grossed $8,542,050.30 in 2004 and 2005 with net profits of

$ 2,135,512.30 based upon a conservative figure of 25%.  5% of the net profits is

$106,775.62.

## ARGUMENT

Rule 12(a)(1) of the Federal Rules of Civil Procedure ("FRCP") provides that the

Defendant shall serve an Answer within 20 days after being served with the Summons and

Complaint.

Rule 12(a)(1) states as follows:

> Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer within 20 days after being served with the summons and complaint.

Rule 55 of the FRCP provides for the entry of judgment by default in the event that a

party fails to plead as provided by the rules.

Rule 55 states as follows:

> (a) **Entry**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and the fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
> (b) **Judgment**. Judgment by default may be entered as follows:
> (1) *By the Clerk*. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) *By the Court*. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but not judgement by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative , who has appeared therein. If the party against who judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry, it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right or trial by jury to the parties when and as required by any statute of the United States.

It is clear that the Defendants have failed to plead or otherwise defend this action as provided under the Rules.  No answer or other responsive pleading has been filed despite service of the Summons and Complaint.

As set forth in the Motion for Default Judgment and the exhibits supporting the Complaint, the Defendants are indebted to the Plaintiff based upon the Affidavit of Robert Gillespie, attached hereto and incorporated herein by reference as Exhibit # 2, the net profit for years 2004 and 2005 were $2,135,512.30 and 5% of that is $106,775.62 and  the Defendants have failed to make payment to the Plaintiff pursuant to the terms of the Employment Agreement, despite demand being sent.   See counsel's statement regarding attorneys fees claimed by Plaintiff, attached hereto as Exhibit #3.

WHEREFORE, Robert Gillespie respectfully requests this Court grant his Motion for Default Judgment, entering judgment in favor of Plaintiff Robert Gillespie and against Defendants Capitol Reprographics, LLC, and Lucas Mageno, in the amount of $ 106,775.62 together with 6 %interest from January 2, 2006, reasonable attorneys' fees  and costs of this action, together with such other relief as the Court deems appropriate.

Respectfully submitted,

Dated: June 22, 2007

/s/ Rand L. Gelber
_____
RAND L. GELBER, DC Bar # 370654
1 Church Street, Suite 802
Rockville, Maryland 20850
301-251-0202
Attorney for Plaintiff, Robert Gillespie

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of foregoing Memorandum in Support of Motion for Default Judgment was sent this 22nd day of June, 2007 via first-class mail, postage prepaid, to: to:Capitol Reprographics, LLC, 555 Capitol Mall, Suite 540, Sacramento, CA 95831 and to Lucas Mageno, 555 Capitol Mall, Suite 540, Sacramento, CA 95831.

/s/ Rand L. Gelber
_____
Rand L. Gelber

IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA

ROBERT GILLESPIE                                      :
                                                     :
                                                     :
                        Plaintiff,                   :
                                                     :
        v.                                           :        Civil Case No.06-2175 (ESH)
                                                     :
CAPITOL REPROGRAPHICS, LLC                           :
                                                     :
and                                                  :
                                                     :
LUCAS MAGENO                                         :
                                                 :
                        Defendants.                  :
                                                     :

## **AFFIDAVIT OF ROBERT GILLESPIE**

The undersigned, being duly sworn, states as follows:

1.      That I am an adult citizen and am competent to testify to the matter stated

herein which are made upon my personal knowledge.

2.      That I first became employed with Capitol Reprographics ("Capitol") in

November 2003 as the Director of Client Services in the D.C. office, pursuant to an

Employment Agreement attached to the Complaint.

3.      I was previously employed in the document services business for 7 years doing

essentially the same type of services offered by Capitol.

4.      The Employment Agreement entitles me to 5% of the net profits of the business

while I was employed.

5.      Based upon my extensive experience in this industry and my familiarity with

Capitol's operation, a conservative figure for net profits, which is gross revenues less

expenses, is 25%.

6.      Capitol generated revenues of $ 8,542,050.30 in calendar years 2004 and 2005.

7.      A conservative figure for net profits is $ 2,135,512.30, which is 25% of the gross revenues.  My 5% share of the net profits is $ 106,775.62.

8.      I have incurred attorneys fees as a result of the failure of Defendants to pay me my profit sharing, which shall be submitted in a separate Statement of Account of Rand L. Gelber.

/s/ Robert Gillespie

_____

Robert Gillespie