**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBERT GILLESPIE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Case No. 06-2175 (ESH) |
| | : | |
| CAPITOL REPROGRAPHICS, LLC, | : | |
| | : | |
| and | : | |
| | : | |
| LUCAS MAGENO, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO VACATE DEFAULT JUDGMENT AND DISMISS FOR LACK OF JURISDICTION**

COMES NOW Plaintiff, Robert Gillsepie, by and through counsel, Rand L. Gelber, Esq., and in opposition to Defendants' Joint Motion to Vacate Default Judgment and Dismiss for Lack of Jurisdiction, submits this Memorandum of Points and Authorities in support and states:

**Statement of Pertinent Facts**

On or about December 20, 2006, the Plaintiff filed with this Court a Complaint seeking judgment against the Defendants for breach of contract. On that date, a summons was issued for each named Defendant. As previously submitted to this Court, service of those summonses was not properly effectuated. On February 7, 2007, Plaintiff's counsel received a call from John Carmichael ("Carmichael"), a purported attorney in California who advised that he was representing the Defendants; that he and the Defendants were aware

of and had reviewed the instant suit; and, Carmichael expressed a strong desire to resolve the matter. Carmichael further represented that he was requesting an extension of time in which to file an answer and strongly suggested an offer of settlement would be presented in the interim. At the request of Plaintiff's counsel, Carmichael also agreed that he would prepare a stipulation with respect to the extension of time and fax it to Plaintiff's counsel when complete for review and filing with this Court. Subsequently, Carmichael and Plaintiff's counsel engaged in numerous telephone conversations regarding this action, wherein Carmichael repeated his promises to provide the stipulation requested. In particular, Plaintiff's counsel discussed this action with Carmichael in February, 2007, March 12, 2007 and May 15, 2007. See Plaintiff's counsel's affidavit, attached hereto and incorporated herein as Exhibit #1. Despite the numerous conversations, Carmichael never sent Plaintiff's counsel the requested stipulation. *See* Plaintiff's counsel's email to Carmichael, dated March 5, 2007, attached hereto and incorporated herein as Exhibit #2.

On April 23, 2007, the Defendants were personally and properly served with process. See docket entry #7 (affidavit of service on Defendants). At no time between February, 2007, and April 23, 2007, did Plaintiff's counsel receive the stipulation from Carmichael, nor did Carmichael attempt to contact Plaintiff's counsel regarding this action during that time. Carmichael never entered his appearance in this matter. Carmichael, by his own admission to Plaintiff's counsel, is not a member of the Bar of this Court.

On May 14, 2007, this Court entered an Order directing the Defendants to respond to the Plaintiff's Complaint on or before June 1, 2007. This Court's Order was issued and sent to the Defendants' address. The Defendants failed to file with this Court a responsive pleading on or before June 1, 2007. On June 22, 2007, Plaintiff filed with this Court

2

Plaintiff's Motion for Default Judgment.  Plaintiff's Motion for Default Judgment was sent to the Defendants' address.    On June 28, 2007, the Clerk of the Court entered an Order of Default against the Defendants.  On July 9, 2007, by Order of this Court, Plaintiff was directed to move for Default Judgment on or before July 20, 2007.  That Order was sent to the Defendants' address.  On July 11, 2007, the Plaintiff filed with the Court a Motion for Default Judgment.  The Motion for Default Judgment was sent to the Defendants' address.  On July 17, 2007, this Court entered an Order Granting Judgment by Default ("Judgment by Default").  This Court's Judgment by Default was sent to the Defendants' address.   At that time, no attorney had ever entered their appearance as attorney of record for Defendants in this matter.  On September 20, 2007, the Plaintiff faxed to the Defendant, Lucas Mageno, a copy of this Court's Judgment by Default.  *See* Facsimile Transmittal Sheet with attachments and Fax log, dated September 20, 2007, attached hereto and incorporated herein as Exhibit #3.

On January 20, 2008, the Plaintiff called Defendant, Lucas Mageno, and again advised Defendant that a Judgment by Default had been entered against him.  See Gillespie affidavit attached hereto and incorporated herein as Exhibit #4.  Further, on January 20, 2008, Plaintiff spoke to Mr. Mageno and advised him that Plaintiff was willing to discuss settlement; however, the Defendant, Lucas Mageno, stated that he would fight the Judgment by Default in court.  See Gillespie affidavit.

On April 15, 2008, Plaintiff filed with the Circuit Court for Fairfax County, Virginia, an Affidavit Pursuant to Code of Virginia § 8.01-465.3, by which the Plaintiff enrolled this Court's Judgment by Default with the Circuit Court for Fairfax County pursuant to the Uniform Enforcement of Foreign Judgments Act, Va. Code Ann. §§ 8.01-465.1 through

8.01-465.5.  On April 16, 2008, the Clerk of the Circuit Court for Fairfax County sent to Defendants' address a notice of the Plaintiff's enrollment of this Court's Judgment by Default in Fairfax County, Virginia.

This Court entered its Judgment by Default on July 17, 2007.  On July 16, 2008, only one day short of year following this Court's Judgment by Default, the Defendants filed with this Court their Joint Motion to Vacate Default Judgment and Dismiss for Lack of Jurisdiction ("Motion to Vacate").

It is note worthy that the Defendants make a conspicuous appearance before this Court requesting relief from judgment shortly after it has become apparent that improved real property located in Fairfax County, Virginia, owned by Defendant, Lucas Mageno, has been encumbered by, and is a source of enforcement of, this Court's Judgment by Default. It is also note worthy that, to date, Plaintiff's counsel has not been properly served with the Motion to Vacate, despite a telephonic request made on July 23, 2008, that Defendants' counsel effectuate proper service on Plaintiff's counsel.  Further, Plaintiff's counsel only became aware of the Motion to Vacate through CM/ECF, and has not yet been properly served as certified by Defendants' counsel, nor has he received any response to the July 23, 2008 request for proper service in accordance with the Federal Rules of Civil Procedure.

## Standard of Review

"A court is empowered to enter a default judgment against a defendant who fails to defend its case."  *Int'l Painters & Allied Trades Industry Pension Fund v. Newburgh*, 468 F.Supp.2d 215, 217 (D.D.C. 2007).  And, "[w]hile modern courts do not favor default judgments, they are certainly available 'when the adversary process has been halted

4

because of an essentially unresponsive party.'" *Id.*, quoting *Jackson v. Beech*, 636 F.2d 831, 835-36 (D.C. Cir. 1980).

Fed R. Civ. P. 60(b)(1) provides for relief from a final judgment arising from a defendant's "mistake, inadvertence, surprise or excusable neglect". Fed R. Civ. P. 60(b)(1). Fed. R. Civ. P. 60(b)(4) further provides for relief from final judgment where the judgment is void. And, Fed. R. Civ. P. 60(b)(6) provides for relief for "any other reason that justifies relief". A court will only award Rule 60(b)(6) relief in extraordinary cases. *Ackerman v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 213 (1950). Further, Motions under Rule 60(b) must be made within a reasonable time, unless good cause can be shown for the delay. *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004)(citations omitted). "Moreover, "Rule 60(b) relief will be afforded only in 'unique circumstances'. *Id.*(citations omitted).

The standard which enables a defendant to obtain relief pursuant to Rule 60(b) is rigorous because "'the concepts of finality...are more deeply implicated' in default judgment cases." *Int'l Painters & Allied Trades Industry Pension Fund v. H.W. Ellis Painting*, 288 F.Supp.2d 22, 25 (D.D.C. 2003) (citations omitted). "The factors that must be balanced are whether: (1) the default was willful, (2) the alleged defense was meritorious, and (3) a set-aside would prejudice plaintiff. *Id.* (citations omitted). The determination of whether a default judgment should be set aside is committed to the sound discretion of the trial court. *Id.*

## Argument

The Defendants state that their "failure to respond was not willful, but a result of

other circumstances contemplated" by excusable neglect under Rule 60(b).  "The burden is upon the party moving to have the judgment set aside to plead and prove excusable neglect."  *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990); *Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1988).

## I.    The Defendants' Default was Willful

The Defendants would have this Court believe that their failure to respond was, among other things, due to "a combination of late, inadequate or failed service of Motions and/or other papers upon Defendants or their California counsel, and financial factors preventing response."  Further, the Defendants' Declaration of John H. Carmichael similarly presents this Court with statements and excuses that are either baseless, false or present personal attacks.  *See* Exhibit #2, as it relates to Carmichael's dealings with Plaintiff's counsel.

Defendants' Motion to Vacate, which is replete with "red herrings" and obfuscation, cannot avoid the truths in this matter: the Defendants were properly served with process in this action on April 23, 2007, and the Defendants failed to file any paper with this Court until fifteen (15) months after service was effectuated.

Further, for an entire year, from April, 2007, through April, 2008, the Defendants regularly received papers, filings and notice thereof by mail, email, and by telephone, from Plaintiff, this Court, and the Circuit Court Fairfax County, Virginia.  *See e.g.* Exhibits #1, #2, #3,#4.  That the Defendants' purported "California counsel" was not served with process or other papers in this matter is irrelevant and is a patently absurd basis to seek relief from judgment in this matter.  No attorney–from California or elsewhere–entered their

6

appearance for the Defendants in this matter, nor had any attorney–from California or elsewhere–waived service or otherwise accepted the duty to accept service on behalf of the Defendants. Rather, following service of process on the Defendants, the Defendants and their purported counsel remained conspicuously silent until one (1) day short of a year following this Court's Judgment by Default, despite more than ample notice of the judgment.

It is clear that, despite contentions to the contrary, the Defendants failure to file a responsive pleading in this matter was willful–perhaps even a strategic gamble–and not due to excusable neglect. Such willfulness cannot afford the Defendants relief in this matter. "[A] party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistake." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999). Indeed, "[t]he boundary of willfulness lies somewhere between a case involving negligent filing error...and a deliberate default." *Id.*, citing *Gucci Am., Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634 (2d. Cir. 1998) (appellate court's reversal of a district court's vacation of default judgment where defendants were aware of pending lawsuit and yet made a deliberate decision not to respond); *See also Simon v. Pay Tel Mgmt., Inc.*, 782 F.Supp. 1219, 1226 (N.D. Ill. 1991) (refusing to vacate default judgment where failure to respond was caused by neglected court rules during settlement negotiations); *Zuelzke Tool & Engineering Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226 (7th Cir. 1991)("where a party willfully, albeit through ignorance or carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted.); *Brand v. NCC Corp.*, 540 F.Supp. 562, 564 (E.D. Pa.

7

1982) (relief from judgment by default not warranted when the defendant decided to ignore court action and instead engaged counsel to attempt settlement but not litigate claims).

The Defendants further state that "Defendant Capitol Reprographics, LLC has been unable to secure counsel...due to receivership, it did not have the funds or permission to obtain local counsel". Further, Carmichael states that "at that time...there were only one or two employees on site in Sacramento, the location was up for sale...and the company founders *were busy* fighting off foreclosure of their personal assets". While such statements may be true, they are irrelevant to this matter. While Defendants may have perceived their "problems" as more important than this suit, they intentional and wilfully chose to ignore this matter in order to take care of what they perceived as more important. Defendant Capital argues, without any support or foundation, that they did not have permission to secure counsel because they were in a receivership. Assuming arguendo that a receivership precludes a party from defending itself or hiring counsel, other than a representation being made in their motion to vacate, there is absolutely no evidence presented to support such a factual contention, lest a legal argument and support for such a position. Notwithstanding the business, there has been no argument whatsoever to explain why Mr. Mageno did not file his answer to the complaint, pro se. Again, the only real explanation is that he was too busy with the other problems of the business to focus on this case. However, that is not a legally sufficient basis to ignore the suit and it shows a wilful failure to respond to the suit. Conspicuously missing from Defendants' Motion is the affidavit of Lucas Mageno, who would be the most logical person to swear to the matters set forth in the motion. The Defendants were properly served, and the Defendants and Carmichael were aware of these proceedings for <u>over a year</u>.

8

Defendants baldly argue that service was late, inadequate or failed, but do not give any support for such strong contentions. Other than an unsupportable argument that Mr. Carmichael should have received copies of all documents filed, even though he is not a member of the DC bar or otherwise entered an appearance in the case, there is no factual or legal support for the argument that service was inadequate or failed. Defendants were served personally on April 23, 2007 and there is absolutely no evidence to refute that, including an affidavit from Mr. Mageno. He has also not argued that copies of all filings were not received at the address indicated in the certificates of service.

That the Defendants and their counsel– Carmichael or another–refused to act during proceedings in this matter, or to even inquire into the proceedings, for over a year despite their obvious knowledge of the proceedings while "*company founders were busy*", demonstrates that the Defendants inaction was not the result of excusable neglect. *United States v. Bowen*, 310 F.2d 45 (5th Cir. 1962); *Allied Steel, General Contractor v. City of Abilene*, 909 F.2d 139 (5th Cir. 1990) (business-threatening circumstances do not constitute excusable neglect); *Selph v. Counil of City of Los Angeles*, 593 F.2d 881, 883 (9th Cir. 1979)(confusion of moving offices and extremely pressing legal matters which caused a distraction do not constitute excusable neglect). Indeed, it has long been held that business distractions and counsel's workload do not constitute excusable neglect. *See Marcaida v. Rascoe*, 569 F.2d 828 (5th Cir. 1978); *Tucker Products Corp. v. Helms*, 171 F.2d 126 (9th Cir. 1948); *Maryland Cas. Co. v. Conner*, 382 F.2d 13, 16 (10th Cir. 1967); *Maghan v. Young*, 80 U.S. App. D.C. 395, 154 F.2d 13 (1946); *Files v. City of Rockford*, 440 F.2d 811 (7th Cir. 1971); *Christoffel v. United States*, 88 U.S. App. D.C. 1, 190 F.2d

585 (1950); *Citizens Protective League v. Clark*, 85 U.S. App. D.C. 282, 178 F.2d 703 (1950).

The Defendants willful silence demonstrates a refusal to make "a good faith effort to adhere to the rules of the court and protect [their] rights." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2nd Cir. 1993). Rule 60(b) is not a vehicle for an attorney's carelessness. *Sutherland v. ITT Continental Baking Co.*, 710 F.2d 473, 476-77 (8th Cir. 1983). It is clear that the Defendants and/or their counsel were aware of the proceedings and slept on their rights. Such carelessness and neglect exhibited by the Defendants and/or their counsel cannot afford them a basis for relief in this matter. *Pelican,* 893 F.2d at 1146 ("[c]arelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)"). The facts establish that the Defendants' have not demonstrated "good cause" for their delay in filing with this Court their Motion to Vacate–or any responsive pleading–since the time service of process was effectuated on April 23, 2007. It is also clear that the Defendants' default was willful. Thus, this Court should deny Defendants' Motion to Vacate.

Mr. Carmichael testifies in his affidavit that right after he spoke to Plaintiff's counsel he checked on the docket on PACER so he could "take some action on behalf of Capitol and Mr. Mageno" but when he checked, he saw the case was dismissed. It should be pointed out that on April 24, 2007, the case was dismissed and just 3 days later, a Motion to Vacate the Order of Dismissal was filed. As more fully set forth in the affidavit of Rand L. Gelber, he spoke to Mr. Carmichael in March and again in May. There were no conversations between counsel in April, 2007. Perhaps Mr. Carmichael would like the

10

Court to believe that he checked the Court's docket in that 3 day period while the judgment was vacated, but the facts and the timeline do not support such a contention. Even assuming that is the case, if in fact Mr. Carmichael was Defendants' counsel, Plaintiff submits that he had a continuing obligation to check the docket for further activity.

## II.   The Defendants have not Presented Meritorious Defenses

When moving to set aside a default, defendant is not required to prove a defense, but only to assert a meritorious defense that it may prove at trial. *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995). "Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Keegel v. Ket West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980). "A mere denial of the claims asserted in the complaint, and nothing more, does not amount to even a 'hint of suggestion' that the defendant can dispute the allegations in the complaint." *Smith v. Comm'r*, 926 F.2d 1470, 1480 (6th Cir. 1991).

The Defendant, Capitol Reprographics, LLC, asserts that its meritorious defenses are based on, among other things, factual inaccuracies and a disagreement over accounting. Despite the obfuscation contained in its assertions, Defendant, Capitol Reprographics, LLC, utterly fails to present this Court with any hint of suggestion that their claims would constitute a *complete defense* in this action. Rather, the Defendant, Capitol Reprographics, LLC, submits mere denials of Plaintiff's claims. Such assertions and mere denials fail to demonstrate that the Defendant, Capitol Reprographics, LLC, has meritorious defenses to this action.

The Defendants assert that their meritorious defenses are also based on personal

jurisdiction and subject matter jurisdiction.  The Defendants state that "Mageno does not reside in the District of Columbia.  Contrary to the allegations in the complaint, he does not "trade as" Capitol Digital Document Solutions, which was a *"slogan"* and not a trade name or other business entity."   While the Defendants appear to engage in semantics by differentiating between "a slogan" and "trading as", the Defendant's very own statements makes clear that Lucas Mageno "traded as" Capitol Digital Document Solutions, LLC. The Employment Agreement, which forms the basis of the claim in this action, and which is attached to the Complaint as Exhibit #1, clearly shows that the parties to the agreement are Capitol Digital Document Solutions, LLC and Robert Gillespie. Mr. Mageno signed on behalf of Capitol Digital Document Solutions, LLC.  Since Capitol Digital Document Solutions, LLC does not exist as a limited liability company or other legal entity, it can only be a trade name of whoever is trading under that name, namely Lucas Mageno.  Based upon this writers knowledge and experience, there is no legal existence of a "slogan". In addition, according to the Corporation Division of the DC government, Capitol Digital, Capitol Digital Document nor Capitol Digital Document Solutions exists in DC as a limited liability company, partnership, corporation or as a "slogan".   Further, Capitol Reprographics, LLC, is not a registered business entity in the District of Columbia. Capitol Digital Document Solutions, LLC, is neither a California limited liability company nor a District of Columbia limited liability company.  In other words, Capitol Digital Document Solutions, LLC, may be a "slogan", but it is not a separate corporate entity under which Defendant, Lucas Mageno, may seek refuge from liability under a "corporate veil".  Thus, Defendant, Lucas Mageno, is personally liable as a party to the contract with Plaintiff. Further, Defendant, Lucas Mageno, maintained his offices in District of Columbia,

transacted significant business in the District of Columbia, and executed a contract with the Plaintiff in the District of Columbia. In addition, Mr. Mageno is listed with the District of Columbia corporate office as the registered agent for Capitol Reprographics, LLC, a California limited liability company who status was revoked. Mr. Mageno's address as registered agent was 1325 G Street, NW, 1st Floor, Washington, DC 20005. Such as representation is strongly indicative of residence or carrying on business in the District of Columbia. Such substantial contacts clearly establish that this Court may exercise such personal jurisdiction over the Defendant which would not violate due process or the notion of fair play. Having failed to properly challenge personal jurisdiction, the Defendants arguments as to the Defendants contact with the District of Columbia must necessarily fail.

The Defendants further appear to suggest that this Court's Judgment by Default is void for improper service, and thus they should obtain relief pursuant to Rule 60(b)(4). "[A] defendant moving to vacate a default judgment based on improper service of process, where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur." *S.E.C. v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007). Further, "A signed return of service constitutes prima facie evidence of valid service 'which can only be overcome by strong and convincing evidence.'" *O'Brein v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (citations omitted). As previously stated, the Defendants were properly service with process in April, 2007. Signed returns of service have been filed with this Court. The Defendants present nothing but obfuscation in their attempt to deny that service of process was effectuated. Thus, it

is clear that the Defendants have failed to meet their burden in challenging service of process in this matter.

The Defendants further assert that this Court lacked subject matter jurisdiction over this action.  The Defendants contend that the Plaintiff's complaint was not properly before this Court due to the amount in controversy.   The cover sheet noted that the claim was $200,000. The Defendants rely on inaccurate numbers and an inaccurate history of this action to support their arguments in seeking relief from judgment.  Indicative of such inaccuracy is Defendants' belief that there had been a "damages hearing" in this matter, which hearing the Defendants discuss to support their flimsy arguments.  There was no "damages hearing" in this matter.  Thus any of the Defendants' arguments which relate to such a "damages hearing" should be taken as only an inaccurate and hurried reporting of the history of this action.  Further, "[w]hen a court considers whether a claim meets the amount in controversy requirement, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith...Nonetheless, if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount', dismissal is justified. *Hunter v. District of Columbia*, 384 F.Supp.2d 257, 260 (D.D.C. 2005) (citations omitted). The Plaintiff's complaint clearly and sufficiently stated that the sum claimed met this Court's amount in controversy requirement, and the Court indeed entered Judgment by Default in an amount which exceeds this Court's amount in controversy requirement.   In addition, upon the presentation of evidence in support of the claim, this court determined that Plaintiff was entitled to judgment in an amount in excess of 100,000. The Plaintiff's complaint clearly met this Court's amount in controversy standard.  Thus, the Defendants'

14

amount in controversy arguments must fail.

The Defendants further assert that the forum and choice of law selection clause in the contract required Plaintiff to file his lawsuit in California and not in the District of Columbia. The Defendants assertions are based on a misreading of the relevant contractual provisions of a document that the Defendant prepared. Paragraph 13 of the contract states that "Any dispute arising out of this agreement or Employee's employment with Company shall be resolved in accordance with the statutory and decisional law of the Sate [sic] of California". Despite the Defendants' reading of Paragraph 13, there is no forum selected to hear any dispute which may arise under the contract. Rather, Paragraph 13 provided that any dispute arising from the contract will be resolved under the statutes and common law of California. The application of California law in this action merely contemplates this Court's power to apply conflict of laws in diversity actions. Thus, despite the Defendants arguments, it is clear that this Court has subject matter jurisdiction over this action, and the Defendants arguments to the contrary must necessarily fail.

### III.    The Plaintiff will Suffer Prejudice if the Default is Set-Aside

The Defendants' own arguments make clear that the Plaintiff will suffer substantial prejudice if this Court's Judgment by Default is set-aside. The Plaintiff's likelihood of a successful recovery diminishes rapidly with the passage of time as assets of the Defendants disappear or are allocated to other concerns during the Defendants' alleged receivership. Further, a set-aside of this Court's Judgment by Default will unfairly prejudice the Plaintiff by forcing the Plaintiff to expend further time and money to collect

on a claim as to which there are no meritorious defenses. Moreover, the Plaintiff has already dedicated significant time and resources toward the filing of papers with this Court and the Circuit Court for Fairfax County, Virginia, and toward informing the Defendants of this action and its enforcement, including telephone calls, emails, and facsimile transmissions. Despite Plaintiff's efforts, the Defendants <u>remained silent for over a year</u> and now request that their blatant refusal to act be rewarded by allowing the Defendants to further prejudice the Plaintiff and his cause.

Even if this Court should find that the Plaintiff would not suffer prejudice as a result of the setting aside of this Court's Judgment by Default, "an absence of prejudice to plaintiff does not in itself entitle defendant to relief from judgment. *Int'l Painters Fund*, 288 F.Supp.2d at 31, citing *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2nd Cir. 1998). This is so because, despite a court's "interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." *American Alliance Insurance Co. v. Eagle Insurance Co.*, 92 F.3d 57, 61 (2nd Cir. 1993). Thus, a court may refuse to vacate a default judgment even where a plaintiff will suffer minimal prejudice or no prejudice at all. *See Commercial Bank of Kuwait v. Rafidian Bank*, 15 F.3d 238, 244 (2nd Cir. 1994)(refusal to vacate default judgment without consideration of prejudice); *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993)(the amount of prejudice one will suffer is less important than other factors); *Matter of Dierschke*, 975 F.2d 181 (5th Cir. 1992)(upon finding intentional failure to file responsive pleadings, there is no need to find prejudice to plaintiff); *Marziliano v. Heckler*, 728 F.2d 151, 157 (2nd Cir. 1984)(affirming district court's refusal to set aside default based on willful

16

conduct and lack of meritorious defenses alone).  It is clear that Defendant's willfulness and lack of meritorious defenses alone establish that this Court should deny the Defendants' Motion to Vacate.

## Conclusion

The facts establish that the Defendants refusal to file a responsive pleading in this matter was willful and not a result of excusable neglect.  Further, it is clear that the Defendants have failed to sufficiently present meritorious defenses to the underlying cause of action in this matter, and the Plaintiff will suffer substantial prejudice if the Defendants' dilatory conduct and strategic gamble is rewarded by a setting aside of this Court's Judgment by Default.

WHEREFORE, based upon the foregoing, and such other arguments as may be advanced in a hearing on this matter, Plaintiff, Robert Gillespie respectfully requests that this Court deny Defendants' Joint Motion to Vacate Default Judgment and Dismiss for Lack of Jurisdiction for Lack of Jurisdiction, and for such other and further relief as the nature of this cause and the interests of justice may require.

Respectfully submitted,

/s/ Rand L. Gelber
Rand L. Gelber, Esquire, Bar # 370654
One Church Street
Suite 802
Rockville, Maryland 20850
301-251-0202

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of July, 2008, that a copy of the foregoing Opposition to Defendants Motion to Vacate Default Judgment and Dismiss for Lack of Jurisdiction was mailed, postage prepaid and via electronic filing, to Athan T. Tsimpedes, Esq., 11 Dupont Circle, NW, Suite 500, Washington, DC 20036.

/s/ Rand L. Gelber____

Rand L. Gelber, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA

ROBERT GILLESPIE                              :
                                              :
                                              :
                  Plaintiff,                  :
                                              :
        v.                                    :        Civil Case No.06-2175 (ESH)
                                              :
CAPITOL REPROGRAPHICS, LLC                    :
                                              :
and                                           :
                                              :
LUCAS MAGENO                                  :
                                              :
                  Defendants.                 :
                                              :

**<u>AFFIDAVIT OF RAND L. GELBER</u>**

The undersigned, being duly sworn, states as follows:

1.      That I am an adult citizen and am competent to testify to the matter stated

herein which are made upon my personal knowledge.

2.      That I am attorney in good standing and licensed to practice law in both the

state and federal courts of Maryland, the District of Columbia and the Commonwealth of

Virginia and submit this affidavit in support of Plaintiff's opposition to the Defendants'

Motion To Vacate Default Judgment and Dismiss for Lack of Jurisdiction.

3.      I first received a call from John Carmichael some time in February, 2007,

advising that he was calling on behalf of  the Defendants and was contacting me in an

effort to assist them in resolving the case. He acknowledged that he was a California

attorney and not a member of the US District Court for the District of Columbia.  He

advised that his clients were aware of the suit and had received a copy of same. (The first

attempt at service of the Complaint was via certified mail, in early January 2007, which was

signed for by J. Stepnagh.  Unfortunately, the green card was not dated and the person signing did not appear to be the addressee). He requested an extension of time in which to respond to the suit and I agreed to an extension and he advised that he would prepare a stipulation and forward it to me. He further advised that in the meantime, he would speak to his client and get back to me shortly with a settlement offer.

4.    I did not hear back from Mr. Carmichael so I located him via the internet and sent him an e-mail, on March 5, 2007 prompting him for a response, in an effort to either resolve the case or move it along. In that e-mail, a copy of which is attached to the opposition, I advised him that if I did not hear from him by March 7, 2007, I was going to proceed with seeking a judgment

5.    I believe I may have had another conversation with Mr. Carmichael some time in May, 2007, again, in an effort to resolve the case. While I cannot testify as to the exact conversation, and I may have eventually told him that we were still waiting for an offer, I never hung up on Mr. Carmichael or slammed the phone down on him. I never heard back from Mr. Carmichael.

6.    At no time in any of our conversations did Mr. Carmichael tell me that the company was in receivership. All he shared with me was that they were in the process of selling the company and were very busy. In addition, at no time did Mr. Carmichael ever request that I send him courtesy copies of any pleadings that I intended on filing in the case.

7.    In furtherance of Plaintiff's efforts to collect the judgment in this matter, my client became aware of a property in Fairfax County, Virginia which is owned, at least in part by Lucas Mageno, his wife and others, and instructed me to obtain a certified copy of

the judgment and thereafter registered the judgment in Fairfax County Circuit Court, which became enrolled as a judgment on April 15, 2008, judgment no. 439658.

8.     More recently, I received a call from Defendants' counsel,   Mr. Tsimpedes on May 21, 2008, who left a message on my voice mail that he was going to be filing a motion to vacate the judgment and sought my consent.  I returned his call and left a message that I would not consent and requested that he call me. I called him again several weeks later, and we briefly discussed the case but he was unable to talk and said he would get back to me but he never did.  I then received a call from Craig Holcomb, an attorney in Rockville, who advised that he was co-counsel and a discussion ensued regarding settlement but the parties never reached an agreement.

7/30/2008

/s/ Rand L. Gelber

_____

Rand L. Gelber



**Hotmail®**

bogey2@hotmail.com                                          Printed: Tuesday, March 6, 2007 2:19 PM

| **From :** | <rgelbermd@aol.com> |
| **Sent :** | Monday, March 5, 2007 11:24 PM |
| **To :** | jhclaw1@hotmail.com |
| **CC :** | bogey2@hotmail.com |
| **Subject :** | Gillespie v. Mageno, et al |

I am disappointed that I have not heard from you regarding the proposed stipulation, and possible settlement. I called you earlier today and left a message. I had expected, based upon our most recent telephone conversation of approximately 10 days ago that you were going to be sending me a stipulation that Friday and a settlement proposal on the following Monday, one week ago. To date, I have not heard anything from you. It is my hope that this has been an oversight on your part and not an effort to delay the proceedings. Please contact me no later than the close of business on Wednesday, March 7 to advise regarding your intentions. Otherwise, I will proceed with my request for default judgment. I look forward to hearing from you.

Rand Gelber
301-251-0202

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com.**

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Lucas Mageno | FROM:<br>Bob Gillespie |
| COMPANY:<br>Capitol LLC | DATE:<br>9-20-07 |
| FAX NUMBER:<br>916-449-2821 | TOTAL NO. OF PAGES INCLUDING COVER:<br>3 |
| PHONE NUMBER:<br>916-449-2820 | SENDER'S DIRECT PHONE NUMBER: |
| RE: | SENDER'S MOBILE PHONE NUMBER:<br>202-905-4473 |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**JUL 1 7 2007**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ROBERT GILLESPIE                    :

                    :

              Plaintiff,            :

                    :

       v.                           :          Civil Case No.06-2175 (ESH)

                    :

CAPITOL REPROGRAPHICS, LLC          :

                    :

and                                 :

                    :

LUCAS MAGENO                        :

                    :

              Defendants.           :

                    :

                    :

### Order Granting Judgment By Default

Upon consideration of the Motion for Default Judgment by filed by the Plaintiff, Robert
Gillespie and it appearing that the Defendants have failed to timely respond to the Complaint,
and the Court entering an Order of Default on June 28, 2007, and it further appearing that the
monies claimed by the Plaintiff from the Defendants are due and owing, and the relief
requested should be granted, it is this _13_ day of _July_, 2007, by the United
States District Court for the District of Columbia,

ORDERED, that Plaintiff's Motion for Judgment by Default be and the same is hereby
GRANTED; and it is further

ORDERED, that judgment be and is hereby entered in favor of Plaintiff Robert Gillespie
and against Defendants Capitol Reprographics, LLC and Lucas Mageno, jointly and severally,
in the amount of $106,775.62, ~~interest at 6% from January 2, 2006,~~ together with attorney's
fees of $ _3726.25_ and costs of ~~this action~~. _& 270.22._

_Ellen S Huvck_
United States District Judge

**HP Officejet J5700 All-in-One series**

Fax Log for
Scott Haskel
202-628-2899
Sep 20 2007 6:04PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| Sep 20 6:02PM | | Fax Sent | 19164492821 | 1:54 | 3 | OK |

IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA

ROBERT GILLESPIE                                    :
                                                    :
                                                    :
                    Plaintiff,                      :
                                                    :
        v.                                          :        Civil Case No.06-2175 (ESH)
                                                    :
CAPITOL REPROGRAPHICS, LLC                          :
                                                    :
and                                                 :
                                                    :
LUCAS MAGENO                                        :
                                                    :
                    Defendants.                     :
                                                    :

## AFFIDAVIT OF ROBERT GILLESPIE

The undersigned, being duly sworn, states as follows:

1.      That I am an adult citizen and am competent to testify to the matter stated

herein which are made upon my personal knowledge.

2.      That this affidavit is being submitted in support of my opposition to the

Defendants' Motion To Vacate Default Judgment and Dismiss for Lack of Jurisdiction,

which I have read and am familiar with.

3.      Subsequent to the entry of judgment by this Court, I contacted Lucas Mageno

via telephone, on or about September 20, 2007, to see if he had any interest in settling the

case. He claimed he was unaware that the Court had entered judgment and he expressed

his displeasure with Mr. Carmichael, who he said was to have taken care of it. I then faxed

him a copy of the judgment.

4.      I had another telephone conversation with Mr. Mageno on January 20, 2008,

again inquiring into his interest in resolving the matter.  He advised that his attorney, Mr.

Carmichael, and a local attorney in DC who he did not identity, were going to fight the judgment in court and that a motion would be filed soon. He further advised that Capitol was an LLC and he was protected personally.

5.    With respect to the challenge by the Defendants as to the damages, I have very extensive experience in the industry of which Capitol Reprographics participates in and coupled with my familiarity with Capitol's operation, a conservative figure for net profits, which is gross revenues less expenses, is 25%.

6.    Capitol generated revenues of $ 8,542,050.30 in calendar years 2004 and 2005.

7.    A conservative figure for net profits is $ 2,135,512.30, which is 25% of the gross revenues.  My 5% share of the net profits is $ 106,775.62.

8.    With regard to the claim in the motion that no efforts have been made to collect the judgment, I became aware of a property in Fairfax County, Virginia which is owned, at least in part by Lucas Mageno, his wife and others, and instructed my attorney to obtain a certified copy of the judgment and instructed him to register the judgment in Fairfax County Circuit Court, which became enrolled as a judgment on April 15, 2008, judgment no. 439658.

7/30/2008

/s/ Robert Gillespie
_____
Robert Gillespie