UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT GILLESPIE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAPITOL REPROGRAPHICS, LLC, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 06-2175 (ESH) |

### MEMORANDUM OPINION

Defendants Capitol Reprographics, LLC ("Capitol Reprographics") and Lucas Mageno have moved to vacate the default judgment entered on behalf of plaintiff Robert Gillespie and to dismiss this case for lack of jurisdiction. Because the Court finds that it has both subject matter and personal jurisdiction, it will deny defendants' motion to dismiss. The Court also finds that defendants are not entitled to vacate the default under Fed. R. Civ. P. 60(b)(1), but that the record regarding the extent of plaintiff's damages is insufficient to sustain the Court's judgment. Therefore, the Court will set aside the default judgment entered on July 17, 2007, and hold a hearing limited to the issue of damages.

### BACKGROUND

Plaintiff filed his complaint on December 20, 2006, alleging that he had entered into an Employment Agreement on November 1, 2003, with Mageno, trading as Capitol Digital Document Solutions, LLC ("Capitol Digital"), an unformed entity that "appears to be" a subsidiary of Capitol Reprographics (Compl. ¶ 4), and that defendants breached the terms of the Agreement by failing to pay him 5% of the net profits of Capitol Digital for calendar years 2004

and 2005 pursuant to a profit sharing program provided for in the Agreement.[1]  (Compl. ¶¶ 14-16; *see also* Compl. Ex. 1 ["Employment Agreement"] ¶¶ 4, 9.)

On April 5, 2007, the Court ordered plaintiff to file proof of service by April 20, 2007. When plaintiff failed to comply with the Order, the Court dismissed the case without prejudice on April 24, 2007.  Three days later, on April 27, 2007, plaintiff filed a motion to vacate the dismissal on the grounds that both defendants had been personally served at the same address in Sacramento, California.  The Court granted the motion and reinstated the case by Order dated May 14, 2007.  In that same Order, the Court directed defendants to respond to the complaint by June 1, 2007.  Defendants were sent copies of this Order at the Sacramento address.  Defendants failed to file a response.  Therefore, on June 11, 2007, the Court issued a Show Cause Order directing plaintiff to cause default to be entered.  The Court also mailed a copy of that Order to defendants.  Thereafter, on June 27, 2007, plaintiff moved for default, which was entered the following day.[2]  By Order dated July 9, 2007, which Order was mailed to defendants, the Court directed plaintiff to move for default judgment.  Plaintiff so moved on July 11, 2007, certifying service on defendants at the Sacramento address.  The motion was granted and an Order was entered on July 17, 2007, awarding plaintiff $106,775.62 in damages plus attorneys fees and costs of $3,996.47.  As of that date, defendants had not entered an appearance.  In fact, defendants did not enter their appearance until July 16, 2008, almost one year to the day after

---

[1] Plaintiff resigned from his position at Capitol Digital on March 8, 2006.  (Compl. ¶ 9.)

[2] Plaintiff originally moved for default judgment on June 22, 2007, but the motion was denied because plaintiff had not first caused the Court Clerk to enter a default.  By Minute Order dated June 25, 2007, the appropriate procedure was explained and plaintiff was given until July 2, 2007 to file for default.  The Court mailed a copy of this Minute Order to defendants in Sacramento.

entry of the default judgment. On that date, defendants filed their joint motion to vacate the default judgment and to dismiss for lack of jurisdiction.

## ANALYSIS

Pursuant to Federal Rule of Civil Procedure 60(b), a court may relieve a party from a final judgment for a number of reasons, including "mistake, inadvertence, surprise, or excusable neglect" or if "the judgment is void." Fed. R. Civ. P. 60(b)(1), (4).[3]

> A motion to set aside a default judgment [for mistake, inadvertence, surprise, or excusable neglect] pursuant to Rule 60(b)(1) is committed to the sound discretion of the trial court and any ruling thereon will be reversed on appeal only if that discretion is abused. In contrast, there is no question of discretion on the part of the court when a motion is under Rule 60(b)(4); if the judgment is void, relief is mandatory.

*Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987) (internal quotation marks and footnotes omitted). The factors to consider under Rule 60(b)(1) are whether: (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense is meritorious. *Id.* Moreover, the motion to vacate must be made no more than one year after entry of the judgment. Fed. R. Civ. P. 60(c)(1). By contrast, "[a] party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity." *Combs,* 825 F.2d at 441-42 (quoting 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.25[2], at 60-224 (1985)).

### I.  Rule 60(b)(4)

Defendants raise two claims that, if meritorious, would render the judgment void. First, defendants claim that the Court lacks subject matter jurisdiction because the complaint fails to

---

[3] The rule also authorizes relief on other grounds not relevant here, including for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This ground, however, is available only in extraordinary circumstances not covered by other sections of the rule. *Liljeberg v. Heath Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). Accordingly, it is inapplicable here.

establish that the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332.[4] Second, defendants claim that the judgment is void vis-à-vis Mageno because the Court lacks personal jurisdiction over him.[5] The Court rejects both of these claims.

### A.    Subject Matter Jurisdiction

When reviewing a motion challenging the sufficiency of the allegations of subject matter jurisdiction, the court must accept all the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in plaintiff's favor. *Watkins v. Pepco Energy Servs., Inc.*, No. 04-2062, 2005 U.S. Dist. LEXIS 16930, at *5 (D.D.C. July 20, 2005) (citing *Gov't of Rwanda v. Rwanda Working Group*, 150 F. Supp. 2d 1, 4 (D.D.C. 2001)). The standard for determining whether a claim satisfies the minimum dollar amount for diversity jurisdiction is that:

> [T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (citations omitted). This rule makes clear that a good-faith claim of adequate amount is sufficient to establish jurisdiction.

---

[4] Pursuant to § 1332(a), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States . . . ."

[5] Defendants also allege that they were improperly served with process, a claim that, if valid, would make the Court's judgment void. *See Combs*, 825 F.2d at 448 (reversing default judgment as void where no effective service). However, as discussed below, defendants have not put forth any evidence that they were not properly served in this action. Accordingly, this argument must be rejected.

In the complaint, plaintiff alleged that "the matter in controversy exceeds, exclusive of interest and costs, the sum or value of ($75,000.00) . . . ."[6] (Compl. ¶ 1.) Accepting these well-pleaded allegations in the complaint as true for purposes of defendants' motion, the Court concludes that plaintiff has properly alleged that he could recover in excess of $75,000, and defendants have failed to offer any legal or factual basis for concluding to a "legal certainty" that the claim is for less than $75,000.

### B. Personal Jurisdiction Over Mageno

Defendants allege that the Court lacks personal jurisdiction over Mageno because he does not reside in the District of Columbia or otherwise have sufficient contacts with the District to support personal jurisdiction.[7] (Defs.' Joint Mot. at 9.) Moreover, defendants deny that Mageno has ever traded as Capitol Digital and instead assert that Capitol Digital is merely "a slogan and not a trade name or other business entity." (*Id.*)

If a defendant does not reside within or maintain a principal place of business in the District, then the District's long-arm statute provides the sole basis for the exercise of personal jurisdiction. Pursuant to this statute, "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from

---

[6] Moreover, in an affidavit submitted in support of his motion for default judgment, plaintiff alleged that Capitol Reprographics had generated gross revenues of $8,542,050.30 in 2004 and 2005 and that, based on a "conservative figure of 25%" of revenues, net profits amounted to $2,135,512.30. Thus, plaintiff calculated the 5% of net profits due him under the Employment Agreement to be $106,775.62.

[7] Defendants do not dispute the Court's jurisdiction over Capitol Reprographics. In fact, by its own admission, Capitol Reprographics has authority to transact business in the District, employed plaintiff to work in its Washington, D.C. office, and offered plaintiff $15,000 in satisfaction of the amounts due him under the Employment Agreement. (*See* Defs.' Joint Mot. at 8; Capitol Reprographics' Answer ¶¶ 2, 6, 15.) Accordingly, as Capitol Reprographics was transacting business in the District and plaintiff's claim arises from those transactions, the company is subject to the Court's jurisdiction. *See* D.C. Code § 13-423.

the person's - (1) transacting any business in the District of Columbia." D.C. Code. § 13-423(a)(1). The statute further provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* at § 13-423(b).

The "transacting any business" prong of the District of Columbia long-arm statute permits the exercise of personal jurisdiction to the full extent authorized by the Due Process Clause of the Constitution. *See Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1092 (D.C. 2008). Thus, "the appropriate inquiry is whether [defendant has] the requisite 'minimum contacts' with the District so that the exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Material Supply Int'l Inc. v. Sunmatch Indus. Co.*, 62 F. Supp. 2d 13, 19 (D.D.C. 1999) (quoting *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1145 (D.C. 1985)). Even "'a single act may be sufficient to constitute transacting business' so long as that contact is 'voluntary and deliberate, rather than fortuitous.'" *Jackson*, 944 A.2d at 1093 (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992, 995 (D.C. 1981)). Therefore, as the D.C. Court of Appeals recently explained in *Jackson*, the Court's minimum contacts inquiry should be guided by "a search for meaningful acts reflecting 'purposeful affirmative activity within the District of Columbia.'" *Id.* (quoting *Bueno v. La Compania Peruana de Radiofusion, S.A.*, 375 A.2d 6, 8 (D.C. 1977)). "When such a connection to the forum state is established, due process is satisfied because the defendant should 'reasonably anticipate being haled into court there.'" *Id.* at 1093-94 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In this case, Mageno signed the Employment Agreement as managing partner of Capitol Digital. However, by defendants' own admission, Capitol Digital is not a business entity, but is

only a "slogan." (Defs.' Joint Mot. at 9; *see also* Capitol Reprographics' Answer at 1-2; Mageno's Answer at 1-2.) Therefore, by signing the contract on behalf of a nonexistent entity, Mageno can be viewed as having transacted business in the District.[8] Defendants claim that plaintiff may not pierce the corporate veil, but because Capitol Digital is not a legal entity, there is simply no veil to pierce. Having entered into this contract with plaintiff to provide services in the District, Mageno should reasonably have anticipated being haled into court here.

## II.    Rule 60(b)(1)

In order to support their contention that the judgment should be set aside under Rule 60(b)(1), defendants claim that their default was not willful but was instead the result of plaintiff's failure to serve their California counsel and of Capitol Reprographics' financial difficulties; that plaintiff would not be prejudiced by vacation of the default and default judgment; and that they have asserted a number of meritorious defenses. While the Court finds these arguments to be unpersuasive and therefore will not set aside the entry of default, it is compelled to conclude that the default judgment entered on July 17, 2007, should be vacated and a hearing on the issue of damages should be held consistent with Fed. R. Civ. P. 55(b)(2).

### A.    Willfulness

"The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003) (citing *Gucci*

---

[8] The District's long-arm statute also permits the exercise of personal jurisdiction over a person "contracting to supply services in the District of Columbia." § 13-432(a)(2). The case law interpreting this provision is sparse. However, by its terms, this provision may also apply to Mageno's actions.

*Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998)).  A finding of bad faith is not necessary to conclude that the defendant acted willfully.  *Id.* (citing *Gucci*, 158 F.3d at 635).

Defendants attempt to excuse their tardy response by blaming plaintiff.  First, they claim, without explanation, that service of "Motions and/or other papers" was "late, inadequate or failed" and even suggest bad faith on plaintiff's part, claiming that plaintiff's failure to serve their California counsel was intended to keep them "in the dark" about plaintiff's motions while keeping California counsel under the impression that the case was dismissed. (Defs.' Joint Mot. at 5-6.)  They also characterize service as "extremely confused," pointing to the Court's *sua sponte* dismissal of the case on April 24, 2007, for lack of service.  (*Id.* at 5.)

With respect to plaintiff's failure to serve motions on defendants' California counsel, the Court notes that counsel never entered an appearance in this action.  Moreover, by his own admission, California counsel became aware of this action "some weeks after it was filed."  (*See* Declaration of John H. Carmichael in Support of Defendants' Joint Motion to Vacate Default and Default Judgment and Dismiss for Want of Jurisdiction ["Carmichael Decl."] ¶ 2 (attached to Defs.' Joint Mot.).)  Thus, he was on notice and could have obtained copies of motions through the PACER system and, as he admits, he did review the docket once through this system.  (*See id.* ¶ 4.)  While defendants attempt to infer bad faith from plaintiff's failure to serve their California counsel, no such inference can be drawn where counsel never appeared in this action nor acted on behalf of defendants except to talk with plaintiff's counsel by phone.[9]  (*See*

---

[9] According to plaintiff's counsel, he also sent an email to Carmichael on March 5, 2007, informing him that if he did not hear from him by March 7, 2007, he was going to proceed with a request for default judgment.  (Affidavit of Rand L. Gelber ["Gelber Aff."] ¶ 4 (attached to Pl.'s Opp'n).)

*id.* ¶¶ 2-3.) In short, whether plaintiff served California counsel is irrelevant, for it appears clear that defendants received copies of the complaint and all relevant orders. Yet, they did nothing.

Defendants' attempt to rely on the Court's dismissal of the case to suggest confusion or ignorance of the action is also unavailing. This Court dismissed the case *without prejudice* on April 24, 2007, due to plaintiff's failure to comply with the Court's Order to file proof of service. Plaintiff moved to vacate the dismissal Order just three days later, along with proof that defendants had been personally served before the issuance of the Court's dismissal Order. Thus, even if defendants' counsel did check the status of the case during the three-day period when the case was dismissed, that does not excuse his client's disregard of subsequent pleadings and Court Orders, including the Order reinstating the case and directing defendants to respond to the complaint. While defendants point to the fact that the Sacramento location to which notices were sent was up for sale and included only one or two employees (Carmichael Decl. ¶ 6), defendants do not claim that plaintiff's pleadings or the Court's Orders were not received. Finally, plaintiff indicates that he faxed a copy of the default judgment to Mageno on September 20, 2007, and discussed the matter with Mageno on that date. (Affidavit of Robert Gillespie ["Gilllespie Aff."] ¶ 3.) Inexplicably, however, defendants failed to take any action for almost another 10 months.[10]

Defendants also rely on the fact that they were having financial difficulties that ultimately resulted in Capitol Reprographics' placement into receivership in June 2007 as an excuse for their failure to appear in this action. However, where defendants were indisputably aware of this suit, their decision to "turn their attention away" from the matter (Defs.' Joint Mot. at 5) in order

---

[10] Plaintiff also avers that Mageno told him in January 2008 that defendants planned to contest the default judgment. (Gillespie Aff. ¶ 4.) Nevertheless, defendants waited another six months until just prior to the expiration of the one-year deadline before filing their motion to set aside the default judgment.

to focus on their financial concerns is no excuse.  Furthermore, while defendants claim that Capitol Reprographics did not have funds or permission to obtain local counsel and could not legally appear *pro se*, nothing prevented Mageno from appearing *pro se*.

Based on these facts, defendants did not make "a good faith effort to adhere to the rules of the court and to protect [their] rights."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993).

### B.   Prejudice

Defendants also contend that vacation of the default and default judgment would not prejudice plaintiff.  (*See* Defs.' Joint Mot. at 7.)  By defendants' own admission, however, Capitol Reprographics "has failed" and was placed into receivership in June 2007, and Mageno is "fighting off foreclosure of [his] personal assets."  (*See id.* at 2; Carmichael Decl. ¶¶ 1, 6.)  Therefore, plaintiff's likelihood of a successful recovery diminishes rapidly with the passage of time as defendants' assets are used to satisfy other debts.  Moreover, plaintiff indicates that he has already registered the judgment in this case in Fairfax County Circuit Court.  (Gillespie Aff. ¶ 8; Gelber Aff. ¶ 7.)  Accordingly, the Court finds that a set-aside of the default judgment in this case will prejudice plaintiff.

### C.   Defendants' Defenses

Defendants assert the following defenses to plaintiff's action:  (1) that Capitol Reprographics offered plaintiff $15,000, which they claim is the amount owed to plaintiff as his share of profits for 2004 and 2005 under the Employment Agreement; and (2) that plaintiff failed "to properly and timely serve, if ever, the Complaint or his several Motions to defendants or

defendants' California counsel."[11]  (Defs.' Joint Mot. at 8-9; Capitol Reprographics Answer ¶ 15.)

When moving to set aside a default and default judgment, a defendant is not required to prove a defense.  "Likelihood of success is not the measure.  Defendants' allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense."  *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (internal quotation marks and citations omitted).

The Court concludes that the first of defendants' asserted defenses fails to constitute a complete defense.  Even if there is a dispute as to the amount owed to plaintiff, defendants appear to concede that they owe plaintiff under the Employment Agreement for his share of profits from 2004 and 2005, and as such, there is no defense as to liability.  Moreover, plaintiff's second defense lacks any basis in fact.  Plaintiff submitted Return of Service affidavits from a California registered process server who averred that he personally served them with the summons and complaint at their Sacramento, California address.  *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) ("A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.") (quotation marks and citations omitted); Fed. R. Civ. P. 4(e)(2)(A), (h)(1)(B).  Plaintiff also certified that he mailed copies of motions filed in this case, and the Court mailed copies of its Orders to defendants at their Sacramento address, the address listed in the

---

[11] Defendants also assert a number of other defenses in their answers, including laches, waiver, and/or estoppel; failure to mitigate damages; that plaintiff is barred from recovery because his recovery is subordinate to amounts remaining after satisfaction of more senior obligations; and that plaintiff breached the terms of the Employment Agreement by resigning without adequate notice.  (*See* Capitol Reprographics' Answer 7-8; Mageno's Answer at 7-8.)  Defendants, however, offer no facts or law to support any of these defenses.  Thus, they amount to nothing more than conclusory denials, which the Court rejects.

Employment Agreement.  Defendants do not deny having received these documents.  Therefore, there can be no claim of lack of service.[12]  *See New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) ("In order to make a sufficient showing of a meritorious defense, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.")

        **D.**     **The Default Judgment Must be Vacated**

Although the Court will not set aside the entry of default, it will vacate the default judgment.  Following the entry of default, a district court can enter a final judgment without requiring further proof of damages in limited situations - - where the claim is for a 'sum certain' or if the claim is liquidated.  *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19-20 (1st Cir. 2003) (affirming the district court's entry of a default judgment with respect to liability, but vacating the court's calculation of damages because claim was not for a sum certain or liquidated).  "[A] claim is not for a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Id.* at 19 (citation omitted).  Similarly, "[a] claim is liquidated when the amount thereof has been ascertained and agreed upon by the parties or fixed by operation of law." *Id.* at 20 (citation omitted).  Having again reviewed plaintiff's proffer regarding his damages, the Court now realizes that further proof is needed to establish damages, since there is no claim for a sum certain or a liquidated amount.  Accordingly, the Court will vacate the default judgment and hold a hearing limited to the issue of damages.  To the extent that defendants wish to contest plaintiff's calculation of damages, they will be

---

[12] Moreover, defendants also allege that this action should be dismissed because the forum and choice of law selection clause in the Employment Agreement requires plaintiff to file suit in California.  This is inaccurate, since paragraph 13 of the Agreement fails to specify any particular forum for suit.

required to attend the hearing and to present competent evidence, including the business records of Capitol Reprographics regarding its net profits for 2004 and 2005.

## CONCLUSION

For the foregoing reasons, defendants' joint motion to vacate default judgment and dismiss for lack of jurisdiction [# 16, 17, 19] will be granted in part in that the Court will vacate the default judgment and set a hearing to determine damages. Defendants' motion will be denied in all other respects. A damages hearing is hereby set for September 18, 2008, at 10:30 a.m., at which time the parties will be able to present evidence on the issue of damages only. Plaintiff's request for a hearing on this matter [# 21] is denied.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 29, 2008